The question for decision is whether the chancellor had jurisdiction to entertain a petition for custody of Maria Hachez, an infant child (of the age of five years) of petitioner and defendant. The advisory master rejected defendan't challenge to the jurisdiction.
These are the allegations of fact made in the petition:
Petitioner, a native and inhabitant of the Republic of Cuba, was temporarily a "resident" of the borough of the Bronx, in the city and State of New York. The infant child was the only issue of the marriage between her and defendant. She and defendant, a citizen of Germany, were married in Cuba. The matrimonial res
was always there.
On April 14th, 1937, by a final decree entered in a court of competent jurisdiction of Cuba, where both parties were *Page 444 
then resident, in proceedings instituted by the petitioner herein and in which both parties appeared, the marriage was dissolved; and there was also incorporated in the decree, by mutual consent, a provision granting custody of the infant child to the petitioner herein, and reserving to defendant "the right to visit the said infant on Thursdays and Saturdays of each week from two to six in the afternoon, and also the right to choose a school where" the petitioner "was domiciled to send his infant daughter to." It was further therein provided that "no fixed residence of" the petitioner "was to be decreed nor was any allowance fixed for her maintenance or support," and that she was "to receive" from defendant "the sum of $30 for support and maintenance of the infant, * * * to be paid monthly."
On May 27th, 1937, defendant, in the ostensible exercise of the right of visitation thus decreed, but in reality contriving to "conceal and hide" the infant from petitioner, and to deprive her of lawful custody, and ultimately to take the child without petitioner's knowledge or consent to Germany, received the child from petitioner, and shortly thereafter, accompanied by the child, boarded at the city of Havana an airplane bound for the airport in the city of Newark, in this state, designing, by the use of passports "falsely obtained," to embark on a steamship sailing for a German port on the following day. The purpose being discovered, the police authorities of Newark, at the request of police officers of Havana, took defendant and the child into custody upon the arrival of the airplane at the Newark airport.
Thereupon, and while defendant and the child were still in such custody, the petition herein was filed. It averred that the infant was being "forcibly and wrongfully restrained and detained" by defendant, and that it was defendant's intention, when released from custody (he and the infant were discharged onhabeas corpus on June 1st ensuing), to take the child to Germany without delay, and thus to deprive petitioner of "her natural rights as the mother" of the infant, as well as those secured by the final decree of divorce. The child was then confined in the Parental Home of the county *Page 445 
of Essex, wherein she was placed when defendant was taken into custody by the police on a charge of kidnapping the child. It prayed that defendant, "or any other person who may presently have its custody," be ordered "to produce the child," and that defendant be restrained, by writ of ne exeat, "from quickly departing the jurisdiction" of the court of chancery, and directed to show cause why permanent custody of the child should not be awarded to petitioner, and why "such order should not be made with respect to" her "care and custody * * * as shall be to" her "welfare and happiness * * *, in accordance with" section 6 and 7 of the act relating to minors (Comp. Stat. 1910 p. 2809;P.L. 1936 p. 776; Rev. Stat. 1937, 9:2-1), and "such further and other relief" granted as may be deemed equitable and just. It was also alleged in the petition that, "by reason of the comity between nations," chancery "should recognize the decree" of the Cuban court, "and give proper effect thereto."
An order was thereupon made directing the issuance of a writ ofne exeat republica against defendant, and requiring him to show cause why custody of the infant should not be awarded to petitioner, "in accordance with the statute in such case made and provided and in accordance with the decree entered in the court at Havana, Cuba." Due service thereof having been made upon defendant, he filed a petition praying leave to enter a special appearance for the purpose of moving to set aside the service of the petition and rule to show cause, and to dismiss the petition, on the ground of lack of jurisdiction. It was therein alleged that he was "domiciled in Bremen, Germany, and has been involuntarily seized and detained in the State of New Jersey while en route to Bremen, Germany;" that petitioner herein "is domiciled in Havana, Cuba, and is temporarily" in the city of New York; and that the infant "is domiciled in Bremen, Germany, and was with your petitioner when he was involuntarily seized and detained" in this state, "while en route to Bremen, Germany, and at the present time is in the custody of Alfred J. Peer, Esq., one of" defendant's solicitors, "by direction of the *Page 446 
Essex county court of common pleas." The claim of lack of jurisdiction was grounded in the fact that neither the petitioner, the defendant, nor the infant child, was domiciled in this state, or was an inhabitant or resident thereof.
An order was entered permitting a special appearance for the purpose indicated; and, after hearing had on "an agreed statement of facts" (which, while not authenticated in the state of the case, embodied in the main, it seems to be agreed by counsel, the matters of fact set forth in the petitions for custody and for leave to enter a special appearance), defendant's motion to dismiss for lack of jurisdiction was denied. This is the action challenged by the appeal.
The matter later proceeded to a hearing (this court denied an application for a stay); and we are advised that a decree has been entered awarding "permanent custody" of the infant to petitioner. An appeal taken from this decree has not been prosecuted. At this hearing defendant interposed the same jurisdictional challenge, and thereupon withdrew; and his counsel now concedes that the determination of the question here presented will be dispositive of that appeal.
Plainly, the infant was not, when the challenged order was made, an "inhabitant" of this state within the intendment of section 6 of the act relating to minors, as amended in 1936,supra. But this enactment did not curtail the general equity jurisdiction to enforce a decree of a foreign court of competent jurisdiction, awarding custody of a minor child to either parent, where, as here, the parent denied custody has, with the intention of evading the decree, brought the child into this state. As to the scope of this general jurisdiction, see Pom. Eq. Jur.§§ 1303 et seq.; also notes to the English case of Eyre v.Countess of Shaftsbury, 2 White T. Lead. Cas. 739, 744, 760
([*]705, 711, 727).
While there is no action known to the common law for the enforcement of a foreign judgment, except the action of debt orindebitatis assumpsit upon the judgment, and debt will lie only for a certain sum of money due (Beale's Conflict of Laws 1377,1378, 1416), it is now the generally accepted rule, sometime said to be grounded in what has been termed *Page 447 
"comity between nations," that, save the right of the state into which the infant comes, upon proof that the custodian of the child is unfit to have control thereof, to grant custody of the child while in the state to another person, a decree of a foreign court of competent jurisdiction awarding custody of a minor child to either parent is enforceable in other jurisdictions. A.L.I.Conflict of Laws §§ 147, 148.
This is but a corollary of the generally accepted rule that the principle of res judicata also applies to the final judgment or decree of a foreign court of competent jurisdiction. Reason dictates that a decree for custody, not tainted by a jurisdictional lack, shall be given everywhere the same recognition and effect that it receives in the state of its origin. Being conclusive of the status of the infant, and of the right of custody, at the time of its rendition, the decree should, in the absence of intervening substantial change, be accorded the same authority in other jurisdictions; and, where there has been such subsequent change, the court undertaking to modify the decree must have jurisdiction in accordance with established principles.
This jurisdiction is one of common exercise in the English chancery. The rule there obtains that, as regards an infant who, while a citizen of another country, is sent to England, chancery will recognize and execute in all respects the orders of the courts of the foreign jurisdiction respecting the infant, so far as consistent with the laws of England. Re Savini, 22 L.T. Rep.
(N.S.) 61. In the notes to the case of Eyre v. Countess ofShaftsbury, supra (at p. 782 ([*]751)), it is said that in dealing with guardians appointed by foreign courts, the English chancery "will have regard to the principles of international law, and the course that all courts have taken in recognising the proceedings of the regularly constituted tribunals of all civilised communities, and especially of those in amicable connection with this country." See, also, In re Willoughby, 30Ch. D. 324; Johnstone v. Beattie, 10 Cl. Fin. 42; Beale'sConflict of Laws 716, 719, 1423.
While the case is not apposite, it is pertinent to note here the cautionary words uttered by Judge Cardozo, speaking for *Page 448 
the New York court of appeals: "The jurisdiction of a state to regulate the custody of infants found within its territory does not depend upon the domicile of the parents. It has its origin in the protection that is due to the incompetent or helpless. * * * For this, the residence of the child suffices, though the domicile be elsewhere. * * * But the limits of the jurisdiction are suggested by its origin. The residence of the child may not be used as a pretense for the adjudication of the status of parents whose domicile is elsewhere, nor for the definition of parental rights dependent upon status. * * * Parents so situated must settle their controversies at home. Our courts will hold aloof when intervention is unnecessary for the welfare of the child." Finlay v. Finlay, 240 N.Y. 429; 148 N.E. Rep. 624;40 A.L.R. 937.
The order is accordingly affirmed.
For affirmance — THE CHIEF-JUSTICE, TRENCHARD, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, WALKER, JJ. 15.
For reversal — None. *Page 449