45 N.J. Super. 338 (1957)
132 A.2d 529
DOROTHY L. CASTEEL, PLAINTIFF-APPELLANT,
v.
WARREN E. CASTEEL, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 18, 1957.
Decided June 7, 1957.
*341 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Sidney M. Schreiber argued the cause for plaintiff-appellant (Messrs. Schreiber, Lancaster & Demos, attorneys).
Mr. George F. Hetfield argued the cause for defendant-respondent (Messrs. Read & Dolliver, attorneys).
*342 The opinion of the court was delivered by CONFORD, J.A.D.
Plaintiff filed this action in the Chancery Division September 24, 1954, seeking an award of custody of two minor children born of her marriage with the defendant, her former husband. She appeals from a judgment in that cause entered November 7, 1956, awarding custody of the children to the defendant rather than to her.
These parties were married in Virginia but came to live in New Jersey, where both of their children, a daughter now aged ten and a son aged six, were born. At all times since, the husband and both children have been residents and domiciliaries of this State. The parties entered into a formal separation agreement October 7, 1953 embodying a property and support settlement, retention of the Westfield home by the defendant, and the vesting of "sole custody and control" of the children in the husband, subject to renegotiation "in the event the situation of either of the parties * * * shall change in the future." The agreement was to be incorporated in any divorce decree or judgment to be made by any court having jurisdiction.
Thereupon, by cooperative arrangement between the parties, plaintiff went to Reno, Nevada, where a judgment of divorce was entered November 30, 1953, dissolving the marriage. The judgment approved the separation agreement, including the provision for custody of the children, but the court reserved jurisdiction over the matter of custody and support of the children. Plaintiff became a permanent resident of Nevada, becoming employed, as she still is, as an assistant in a gambling casino in Reno. In the summer of 1954 plaintiff asked defendant to surrender the children to her and she came East for them. Upon his refusal, she instituted this action. In the latter part of June 1955 defendant permitted plaintiff to take the children to Reno for a five-week visit, as expressly stipulated in the separation agreement. On July 18, 1955, while she still had the children, she filed a motion with the Nevada court for modification of the judgment so as to vest custody in her, and, at the same time, obtained an order restraining the taking of the *343 children by defendant. Defendant's counsel was apprised of the restraint, but, prior to its service on defendant, he flew to Reno and picked the children up on the street August 16, 1955, without the knowledge of plaintiff, and brought them back to their New Jersey home.
The hearing on the modification application was held by the Nevada court December 2, 1955. The defendant appeared by counsel, who cross-examined three witnesses for plaintiff and submitted a defense witness. This was a private investigator, who only furnished proofs regarding the physical surroundings of the house in which plaintiff lived. There was apparently no evidence before the court concerning the circumstances under which the children were being reared and cared for by defendant in New Jersey nor as to plaintiff's character and activities prior to the divorce. Neither defendant nor the children were on hand at the hearing. On December 5, 1955 the Nevada court modified the judgment to grant custody to plaintiff, and thereafter plaintiff amended her complaint in the New Jersey action to set forth the modified Nevada judgment and to pray its enforcement by the Superior Court.
At the trial in the Chancery Division there was a thorough airing of the background of the parties and of their activities material to the issue of comparative fitness to exercise custody over the children and upon the question of their welfare and best interests. The legal issues raised on the present appeal by the plaintiff do not include the merits of the determination by the trial court that the defendant is better able to take care of the children than the plaintiff and that the welfare of the children will be better served by leaving them in the care of the father, who has obviously done a remarkably good custodial job with them thus far with the aid of housekeepers, than by uprooting them from their familiar school, church and neighborhood environment and sending them to live in Reno with a mother who works irregular night hours in a gambling casino. It is appropriate, in passing, to note that while the trial judge withheld a judgment as to the moral fitness of the plaintiff for purposes of exercise of custody, he felt obliged to give consideration to *344 "much evidence concerning the plaintiff's immoral conduct during her marriage" with other men and the strong indication that she had had an extra-marital pregnancy and consequent abortion. There was evidence that plaintiff's personal attention to the children was rather desultory during her cohabitation with defendant. The Union County Probation Officer's report in evidence indicates that the children are well cared for and happy with the defendant. We consider the conclusion of the trial judge on the merits of the custody question overwhelmingly justified by the proofs.
With respect to the main issue projected by the plaintiff  the full faith and credit due the Nevada custody judgment under the Federal Constitution  Judge Tomasulo, sitting in the trial court, held that the parens patriae jurisdiction of the New Jersey court in the matter of supervision of children resident here, reinforced by our statutory policy generally precluding the removal of native children from the state where a fit parent resides here and does not consent to the removal, R.S. 9:2-2; 9:2-4 (see Fantony v. Fantony, 21 N.J. 525, 535 (1956) and the same case in the Chancery Division, 36 N.J. Super. 375, 379 (1955)), warranted an independent inquiry into and determination of the merits of the question of custody without regard to the judgment of the Nevada court. Whether this is a correct conclusion is one of the prime issues on this appeal.

I.
The general question as to when the judgment of a sister state adjudicating the custody of a minor child is entitled to full faith and credit under the United States Constitution, Article IV, Section I, as implemented by Act of Congress, 62 Stat. 947 (1948), 28 U.S.C.A., § 1738, is attended by the widest contrariety of viewpoint and rationale. See the principal and concurring opinions in State of New York ex rel. Halvey v. Halvey, 330 U.S. 610, 67 S.Ct. 903, 91 L.Ed. 1133 (1947), and the principal, concurring and dissenting opinions in May v. Anderson, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953); *345 Ehrenzweig, "Interstate Recognition of Custody Decrees," 51 Mich. L. Rev. 345 (1953); Stansbury, "Custody and Maintenance Across State Lines," 10 Law & Contemp. Prob. 819 (1944); Note, 56 Col. L. Rev. 630 (1956); Comment, 5 Kans. L. Rev. 77 (1956); Stumberg, "Status of Children in the Conflict of Laws," 8 U. of Chi. L. Rev. 42 (1940). Ideological conflict exists as to (a) the basis for jurisdiction in the court rendering judgment, i.e., whether domicile, residence or physical presence of the child is requisite or sufficient, the effect of in personam jurisdiction over the contesting parents, and whether the concept of multiple jurisdiction is valid in this field; (b) the extent to which the temporary nature of the status adjudicated permits a later re-examination of the factual situation obtaining as of the time of the judgment, and (c) the right or duty of the forum, if the residence or domicile of the child, to make its independent investigation as parens patriae, unfettered by principles of res judicata or full faith and credit. The Ehrenzweig, Stansbury and Stumberg articles cited above are uncommonly penetrating investigations of these questions and of their social as well as doctrinal implications.
The United States Supreme Court had two fairly recent opportunities to furnish authoritative guidance in this difficult field in the Halvey and May cases, supra, but eschewed both. In the Halvey case, New York, the state where the parties were matrimonially domiciled, was asked to give credit to a Florida custody judgment in favor of a wife who went there with the child, established a residence and obtained an award of both divorce and custody in a proceeding devoid of personal jurisdiction over the father. The father had returned the child to New York the day before the Florida judgment was entered. The New York court was permitted to render an independent determination on the matter of custody on the limited ground that if full faith and credit was applicable, it was only such as attended the Florida judgment at home, and the Florida law permitted a re-examination of all the circumstances, including those existing at the time the judgment was entered but not then *346 made known to the court. The prevailing opinion specifically reserved decision (330 U.S., at pages 615, 616, 67 S.Ct., at page 906) as to such questions as
"whether Florida at the time of the original decree had jurisdiction over the child, the father having removed him from the State after the proceedings started but before the decree was entered; whether in absence of personal service the Florida decree of custody had any binding effect upon the husband; whether the power of New York to modify the custody decree was greater than Florida's power; whether the State which has jurisdiction over the child may, regardless of a custody decree rendered by another State, make such orders concerning custody as the welfare of the child from time to time requires."
Only one of the questions left beclouded in Halvey was resolved, and that not too satisfactorily, when next, in the May case, supra, the court had occasion to deal with the matter of interstate incidents of a custody judgment. There the parties were matrimonially domiciled in Wisconsin, and, after the wife went to Ohio with the children, the husband obtained an ex parte decree of divorce which also awarded him custody of the children. The wife was served in Ohio but did not appear in the proceedings. Pursuant to the judgment the children were returned to the father in Wisconsin and remained there several years. On a subsequent visit of the children to the mother she refused to return them, and the father brought a habeas corpus proceeding in Ohio to compel their surrender on the basis of the Wisconsin judgment. The Ohio courts held for the father. The Supreme Court reversed, holding that the mother's "personal rights" to "immediate possession" of the children could not be cut off by a judgment in a proceeding in which jurisdiction in personam over her had not been obtained, even if the children were properly regarded as domiciled in Wisconsin when judgment was entered there. The court noted that under Ohio law a habeas corpus suit was not a proper action to determine custody as between the parents. Three members of the court dissented regarding the Wisconsin judgment as adequately founded in the court's jurisdiction over the father and children and requiring *347 full faith and credit. The jurisdictional determination in the May case is not important in the case at hand since the present defendant had submitted to the jurisdiction of the Nevada court. But what Mr. Justice Frankfurter said by dictum, after concurring in the result for the stated reason that Ohio was not bound by the Federal Constitution to recognize the Wisconsin judgment although she was not precluded from doing so as a matter of local law, seems to us basically germane to the problem before us. He said (345 U.S., at page 536, 73 S.Ct., at page 844):
"Property, personal claims, and even the marriage status (see, e.g., Sherrer v. Sherrer, 334 U.S. 343, 68 S.Ct. 1087, 92 L.Ed. 1429) generally give rise to interests different from those relevant to the discharge of a State's continuing responsibility to children within her borders. Children have a very special place in life which law should reflect. Legal theories and their phrasing in other cases readily lead to fallacious reasoning if uncritically transferred to determination of a State's duty towards children. There are, of course, adjudications other than those pertaining to children, as for instance decrees of alimony, which may not be definitive even in the decreeing State, let alone binding under the Full Faith and Credit Clause. Interests of a State other than its duty towards children may also prevail over the interest of national unity that underlies the Full Faith and Credit Clause. But the child's welfare in a custody case has such a claim upon the State that its responsibility is obviously not to be foreclosed by a prior adjudication reflecting another State's discharge of its responsibility at another time. Reliance on opinions regarding out-of-State adjudications of property rights, personal claims or the marital status is bound to confuse analysis when a claim to the custody of children before the courts of one State is based on an award previously made by another State." (Emphasis added)
With the benefit of this significant admonition and against the background of an absence of direct authority from the highest court, we approach the resolution of the issues before us on the basis of such other authority as is available.

II.
Since the forum may always question the existence of jurisdiction in the state of rendition where full faith and *348 credit is sought for a judgment of its courts, May v. Anderson, supra (345 U.S., at page 533, 73 S.Ct., at page 843), the first inquiry here is as to whether Nevada had jurisdiction to enter the modifying judgment of December 5, 1955. The answer of the traditionalists would be in the negative, as Nevada was not then the domicile of the children. 2 Beale, Conflict of Laws (1935), § 144.3, pp. 717, 718; Goodrich, Conflict of Laws (3d ed. 1949), § 136, pp. 421, 422; Restatement, Conflict of Laws, § 117 (1934). Latterly the view has been pressed that residence or presence of a child in a state may have sufficient practical significance to justify recognition of the jurisdiction of its courts to deal with the matter of custody, and that technical niceties as to the domicile of a child in a broken home are frequently irrelevant to the incidence of real interest in a particular state in the matter of his custody. Stansbury, op. cit., supra (10 Law & Contemp. Prob., at pp. 821-824); and see Note, 35 N.C.L. Rev. 83, 84, 85 (1956); cf. Pieretti v. Pieretti, 13 N.J. Misc. 98 (Ch. 1935). A 1953 proposal by the reporter to the American Law Institute on Conflict of Laws for amendment of section 117 of the Restatement would find jurisdiction where there is either domicile or physical presence of the subject of custody, or, as between two or more contestants for the custody of another person, where they are subject to the personal jurisdiction of the court. Tentative Draft No. 1, Conflict of Laws, May 1, 1953, pp. 55-60. The amendment has not yet been acted upon. The "rationale" expounded by the reporter is that a majority of American courts will assume jurisdiction in any of the three cases posited if they deem it wise to do so in a particular situation, and that each such criterion is rationally justifiable. See also analysis in Annotation, 9 A.L.R.2d 434, 439-442 (1950).
Support for the concept of jurisdiction based upon residence or physical presence is to be found in our own cases. See Hachez v. Hachez, 124 N.J. Eq. 442, 447, 448 (E. & A. 1938), expressing approval of the oft-quoted concordant view of Judge Cardozo, stated by dictum in Finlay v. Finlay, *349 240 N.Y. 429, 148 N.E. 624, 625 (Ct. App. 1925); Fantony v. Fantony, supra (21 N.J., at pp. 535, 536). In the Hachez case, supra, jurisdiction was accepted in the case of a child of foreign nationals, present in New Jersey en route from Cuba to Germany, but solely for the purpose of lending enforcement on grounds of comity to a foreign judgment of custody. In the Fantony case the jurisdictional foundation was actually rested by the Supreme Court upon nativity as well as residence in this State. In Brown v. Parsons, 136 N.J. Eq. 493, 499 (E. & A. 1945), the court stated it was "inclined" to the position that where there was no residence of the child in a foreign state, its adjudication of custody was not entitled to full faith and credit here.
We are of the view, in the light of the foregoing, that something less than domicile of these children in Nevada could have sufficed to give the courts of that state jurisdiction to make a determination or enter a judgment of custody. But we doubt whether the posture of the New Jersey cases justifies the conclusion that mere temporary presence of a child in a state on a visit is an adequate jurisdictional basis for a general adjudication of custody, i.e., anything more than a jurisdictional expedient for the purpose of temporarily removing an unfit custodian, otherwise giving necessary physical protection to the child (Restatement, Conflict of Laws, § 118 (1934), and see Tentative Draft No. 1, op. cit., supra, at p. 56) or serving some such limited objective as was entailed in Hachez v. Hachez, supra. But if jurisdiction did attach in Nevada on the basis of the physical presence of the children when the motion for modification was filed there, it was not ousted by the subsequent removal of the children from the state. Sutera v. Sutera, 1 App. Div.2d 356, 150 N.Y.S.2d 448 (App. Div. 1956); cf. Leman v. Krentler-Arnold Hinge Last Co., 284 U.S. 448, 52 S.Ct. 238, 76 L.Ed. 389 (1932); Swanson v. Swanson, 8 N.J. 169, 179-180 (1951).
However, further speculation over the existence of in rem jurisdiction over the status of the children in Nevada is rendered unnecessary, partly because defendant's appearance *350 and participation in the Nevada proceedings gave that state authority to adjudicate at least the respective personal rights of the parties (parents) in the matter of custody, Sutera v. Sutera, supra, and, more cogently, because we are led to the conclusion that, assuming jurisdiction in Nevada in either the in rem or the narrower in personam sense just mentioned, other considerations amply warranted, if they did not compel, the embarkation by the trial court upon the independent inquiry concerning the requirements of the welfare of the children in the matter of custody.

III.
If the Nevada judgment was entitled to full faith and credit in New Jersey, this did not require that New Jersey attach greater finality to the adjudication than Nevada would have. New York ex rel. Halvey v. Halvey, supra. The Nevada statute, C.L. § 9462, p. 767 (1943-1949 Supp.), provides:
"The court, in granting a divorce, shall make such disposition of, and provision for, the children, as shall appear most expedient under all the circumstances, and most for the present comfort and future well-being of such children; * * * provided, that in actions for divorce the court may, during the pendency of the action, or at the final hearing or at any time thereafter during the minority of any of the children of the marriage, make such order for the custody, care, education, maintenance, and support of such minor children as may seem necessary or proper, and may at any time modify or vacate the same."
Plaintiff contends that on an application to the Nevada court for a modification of the order under this section the inquiry would be limited to any change of circumstances since the previous adjudication. It would appear clear to us that in a custody matter the statutory language comprehends the submission of proof of facts and circumstances material to the welfare of the child but withheld from the court at the hearing on the prior order. We are cognizant of the widely held general view that where an existing custody judgment is accorded the status of res judicata it will not *351 thereafter be disturbed except upon a showing of change of circumstances in the interim. Restatement, Conflict of Laws, § 147, comment (a) (1934); and see Hachez v. Hachez, supra (124 N.J. Eq., at p. 447); Dixon v. Dixon, 76 N.J. Eq. 364, 366 (Ch. 1909). But a recent critical analysis of the cases, Annotation, 9 A.L.R.2d 623, 626 (1950), concludes that
"it would appear that, in order to safeguard the welfare of the child and the social interests involved, the trend is to permit the courts a large degree of judicial discretion, unhampered by the application of formal rules of res judicata, the issue in each case being the welfare of the child at the time, and previous decisions of that question being of persuasive rather than binding force."
In any event, the citation by the Supreme Court of Nevada in Abell v. Second Judicial District Court, 58 Nev. 89, 71 P.2d 111, 113 (Sup. Ct. 1937), of the following excerpt from 9 R.C.L. 476, 477 (1915), appears to indicate that the court would, if the issue were squarely presented, take the broad view of the statute:
"A decree fixing the custody of a child is, however, final on the conditions then existing, and should not be changed afterwards unless on altered conditions since the decree, or on material facts existing at the time of the decree, but unknown to the court, and then only for the welfare of the child." (Emphasis added)
Moreover, the Abell opinion was written under an earlier version of the cited statute (amended in 1947), which then read:
"The court, in granting a divorce, shall make such disposition of, and provision for, the children, as shall appear most expedient under all the circumstances, and most for the present comfort and future well-being of such children; * * * provided, the court, upon good cause shown, may change the custody of said minor children, if they should be satisfied that such change will be for the welfare of such children." (Emphasis added) C.L. § 9462, p. 2899 (1929).
The 1947 amendment thus deleted the statutory requirement that "good cause" be shown and instead provided that *352 the court may make any order for custody "as may seem necessary and proper" and may "modify or vacate" such order "at any time."
While no case has been discovered construing the newer language, the changes, if they indicate any change in attitude, indicate a broadening rather than a contraction of the court's power under the earlier statute to modify custody awards.
We therefore conclude the Nevada courts, under local law, would have, upon application, reconsidered the custodial question on the basis of the extensive and vitally material proofs bearing upon the welfare of the children, referred to in the forepart of this opinion, which were submitted to the trial judge in the present case but were not presented to the Nevada court at the hearing it conducted on the modification application in 1955. Therefore the courts of this State were free, even assuming an obligation of full faith and credit toward the Nevada judgment, to consider the question of custody independently upon the basis of the evidence here adduced for the first time. New York ex rel. Halvey v. Halvey, supra.

IV.
Finally, we agree with the view of the trial judge that public policy considerations held in the highest importance in this State preclude the abdication by our courts of their statutory and parens patriae duty and responsibility to decide what custodial disposition is for the best interests of minor children native to and resident, as well as domiciled, in New Jersey all their lives, entirely without regard to a determination of that question by a foreign court in a litigation between their parents. The statutory expression of New Jersey's policy concerning the removal of minor children of divorced or separated parents from this State dates from L. 1902, c. 92 and is now found in the following provisions of the Revised Statutes, as amended:
N.J.S.A. 9:2-2: "When the Superior Court has jurisdiction over the custody and maintenance of the minor children of parents *353 divorced, separated or living separate, and such children are natives of this State, or have resided five years within its limits, they shall not be removed out of its jurisdiction against their own consent, if of suitable age to signify the same, nor while under that age without the consent of both parents, unless the court, upon cause shown, shall otherwise order."
N.J.S.A. 9:2-4: "* * * in no case shall the court having jurisdiction in this State over the person and custody of any minor permit such child to be removed from this State where the mother or father resides in this State and is the suitable person who should have the custody of such child for its best welfare."
This legislation supplements the parens patriae judisdiction of the court. Fantony v. Fantony, supra (21 N.J., at p. 535). Section 9:2-2 evinces a strong policy predilection for keeping minor native residents of this State of tender years, children of divorced or separated parents, from being removed from the jurisdiction without the consent of both parents. Grove v. Grove, 26 N.J. Super. 154, 157 (App. Div. 1953); Sheehan v. Sheehan, 38 N.J. Super. 120, 126 (App. Div. 1955). Only if the court is satisfied that the best interests of the child call for it may such removal take place. And the court before which cause must be shown is the Superior Court of this State, not a tribunal of another jurisdiction. Equally integral to our local public policy is the requirement of section 9:2-4 that no child shall be removed from the State where a New Jersey court determines that a New Jersey resident parent is his most suitable custodian. See Matflerd v. Matflerd, 10 N.J. Super. 132 (App. Div. 1950).
While the judgment of the Nevada court, to whose jurisdiction defendant submitted, may bind the parties inter se, it cannot tie the hands of our courts against the performance of their statutory duty insofar as the children are concerned. In re Erving, 109 N.J. Eq. 294, 301 (Ch. 1931); cf. Dixon v. Dixon, supra. As to them the judicial obligation of independent inquiry and determination is inalienable and supervening. The children are a concern of the court and of the State in propriae personae, not mere chattels the right to possession of which may be conclusively *354 and permanently adjudicated to reside in one or the other parent (In re Erving, supra, at p. 300).
Every state is entitled to enforce in its own courts the policy of its own statutes on subjects properly the incidents of its jurisdiction, and the full faith and credit clause of the United States Constitution does not require otherwise unless the conflicting statute or judgment of another state is shown, on some rational basis, to have a superior basis for recognition. Alaska Packers Association v. Industrial Accident Commission, 294 U.S. 532, 547, 548, 55 S.Ct. 518, 79 L.Ed. 1044 (1935). This principle and the supporting precedent were cited by the Court of Errors and Appeals to sustain the exercise of custody jurisdiction by the New Jersey court as against a prior contrary Florida adjudication in Brown v. Parsons, supra (136 N.J. Eq., at p. 499); compare the stress on local policy in the matter of support of a minor in the dissenting opinion of Mr. Justice Stone in Yarborough v. Yarborough, 290 U.S. 202, 213, 54 S.Ct. 181, 78 L.Ed. 269 (1933); cf. Williams v. North Carolina, 325 U.S. 226, 230, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945). Subsequent decisions of the United States Supreme Court, given application in this State, exemplify the versatility of the principle that full faith and credit will give way to strong local policy. Estin v. Estin, 334 U.S. 541, 547, 68 S.Ct. 1213, 92 L.Ed. 1561 (1948); Carroll v. Lanza, 349 U.S. 408, 411, 75 S.Ct. 804, 99 L.Ed. 1183 (1955); Buccheri v. Montgomery Ward & Co., 19 N.J. 594, 599 (1955); Bowers v. American Bridge Co., 43 N.J. Super. 48 (App. Div. 1956); Reese and Johnson, "The Scope of Full Faith and Credit to Judgments," 49 Col. L. Rev. 153 (1949); and see Nappe v. Nappe, 20 N.J. 337, 342 (1956). But note the caveat in Buzzone v. Hartford Accident and Indemnity Co., 23 N.J. 447, 458 (1957).
The most competent of the recent studies in this field lead to the same terminus on the broader basis of the inherently temporary nature of custody litigation, the underlying social problems and a practical analysis of the real *355 results of the adjudicated cases. Professor Ehrenzweig (op. cit., supra, 51 Mich. L. Rev., at p. 357) writes:
"We have seen, and it should be obvious, that custody decrees require special treatment for purposes of foreign recognition. Not only are such decrees subject to change at any time but consideration for the child's welfare precludes the settlement of a dispute between hostile spouses from becoming binding on their child which has lacked independent representation in these proceedings. The primary principle in this field should be, therefore, and is in fact, the court's discretion exclusively governed by the child's welfare. Contrary to the Restatement rule, neither full faith and credit nor comity can be expected or given at the expense of this discretion beyond the weight given to prior domestic decrees."
Even less weight is accorded the prior adjudication in the critique of Professor Stansbury (op. cit., supra, 10 Law & Contemp. Prob., at pp. 828-830); and see the comment of the 1953 Reporter on Conflict of Laws to the American Law Institute (Tentative Draft No. 1, op. cit., supra, at p. 58). In harmony is the expression by Mr. Justice Frankfurter in the May case, quoted above, to the effect that "the child's welfare in a custody case has such a claim upon the State that its responsibility is obviously not to be foreclosed by a prior adjudication reflecting another State's discharge of its responsibility at another time."
We conclude that the trial court properly made its own investigation and determination of the merits of the disputed issue of custody without regard to the Nevada judgment.

V.
Plaintiff complains that the trial court made an affirmative award of custody to the defendant although the defendant filed no counterclaim or other pleading seeking it. If this be error it is harmless. There was fairly tried out the issue of custody as between the plaintiff and the defendant. An affirmative award to the successful party was a desirable concomitant of the protracted litigation and plaintiff is not substantively prejudiced. An order should *356 be entered amending the pleadings so as to lay a basis for the judgment. R.R. 4:15-1, 4:15-2.
Plaintiff also complains of the inadequacy of the counsel fees awarded and defendant has appealed the award of any counsel fee in behalf of plaintiff at all. The court awarded plaintiff a counsel fee of $750 but not costs. The cash disbursements amounted to $372.96. We deal with defendant's appeal first. He relies upon the separation agreement in which the wife released and acquitted the husband of any costs and fees in any divorce proceeding or otherwise. This was not binding upon the trial court. Grobart v. Grobart, 140 N.J. Eq. 401 (E. & A. 1947). Turney v. Nooney, 21 N.J. Super. 522 (App. Div. 1952), cited by defendant, does not hold that a court of equity is precluded from granting a counsel fee to a divorced wife in a custody proceeding, merely that the statute does not require it. (The wife there had been remarried.) The jurisdiction to do so is well recognized. Welch v. Baker, 83 N.J. Eq. 330 (E. & A. 1914).
We are not disposed to interfere with the discretion of the trial court as to the amount of the award to the plaintiff. It was entitled to consider, as undoubtedly it did, her independent income, the separation agreement and the totality of circumstances surrounding the case, including the merits and the outcome.
Plaintiff has asked that she be awarded costs and counsel fee upon this appeal. She is allowed a counsel fee of $250 and printing expenses to the extent of $463.55.
Affirmed.