45 N.J. Super. 555 (1957)
133 A.2d 695
WILLIAM F. WILSON, PLAINTIFF-APPELLANT,
v.
ANDREW FAULL, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 27, 1957.
Decided June 28, 1957.
*558 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Benjamin Asbell argued the cause for plaintiff-appellant.
Mr. Samuel P. Orlando argued the cause for defendant-respondent (Messrs. Orlando, Kisselman & Devine, attorneys).
The opinion of the court was delivered by CONFORD, J.A.D.
The problem which primarily concerns us here is the difficult one of choice of law where the cause of action of an injured employee for negligence by a third person is disposed of differently by the workmen's compensation statutes of the state of injury, on the one hand, and, on the other, of the state where the employer, employee and the defendant reside, the employment contract was made, and the business of the employer is primarily carried on.
The defendant, a resident of this State, with offices and place of business at Collingswood, New Jersey, contracted in Pennsylvania with Sunday Breakfast Association, in December 1953, for the removal of wooden eaves and the installation of a metal cornice on the building of the Association in Philadelphia. Thereafter defendant subcontracted with J.W. Tragle, of Haddonfield, New Jersey, by agreement made in New Jersey, for the supplying and installation of the cornice, defendant to erect a scaffold and prepare the site for Tragle's workmen. Plaintiff, a resident of Camden, New Jersey, had for some time been in the employ of Tragle under a hiring effected in this state. On January 27, 1954, as such an employee of Tragle, plaintiff was working at the *559 site of the cornice installation in Philadelphia when he fell from the scaffold and sustained the injuries for which he brought the present action in the Law Division, asserting a claim for damages for injuries caused by defendant's negligence in the construction and maintenance of the scaffold. Plaintiff had first sought and been allowed an award of workmen's compensation in New Jersey as against his employer, Tragle. One of the defenses in the present action was that plaintiff had no cause of action against defendant under the law of Pennsylvania, because, under the circumstances obtaining when he was injured, he was a "statutory employee" of the defendant, within the workmen's compensation act of that commonwealth, under which plaintiff's common law remedy against the defendant was barred and his rights restricted to compensation at statutory rates. Upon the filing of a stipulation of facts setting forth the facts recited, as well as others, defendant successfully moved for summary judgment.
The principal basis for the decision of the trial court was that under the appropriate rule of conflict of laws plaintiff's rights against defendant were controlled by the tort rule of liability of Pennsylvania, the place of the injury. The argument of plaintiff that the workmen's compensation law of New Jersey, which would allow the common law action, should be applied in view of the contractual nature of the employment relationship, was rejected on the ground that "plaintiff was not a party to the contract between Tragle and the defendant."

I.
At the outset it is to be observed that questions of full faith and credit under the United States Constitution are not posed in the Statement of Questions Involved in the briefs, nor, apparently, were they raised in the County Court, and, therefore, the determination of the issue at hand does not require retracing the ground gone over in such recent cases as Buccheri v. Montgomery Ward & Co., 19 N.J. *560 594 (1955), and Bowers v. American Bridge Co., 43 N.J. Super. 48 (App. Div. 1956), affirmed 24 N.J. 390 (1957), although consideration of the relative interests of both states in the relationships and legal consequences involved will be found pertinent in the matter of choice of law as well as in that of full faith and credit and decisions in both fields sometimes mutually relevant. 2 Larson, Workmen's Compensation (1952), chapter XVI, p. 355 et seq.; Comment, 23 Univ. of Chi. L. Rev. 515 (1956); Case Note, 67 Harv. L. Rev. 1281 (1954). We accept and deal with the present issue, as litigated by the parties both at the trial level and here, as one basically calling for a determination as to appropriate choice of law. However, there are passing statements in the body of defendant's brief assuming that full faith and credit requires affirmance of the judgment, and we will deal with the point later in this opinion.
Obviously the first step in the problem is resolution of the inquiry as to whether the substantive legal question presented is, as was assumed by the trial court, a matter primarily of tort law, rather than some other category of the law. Goodrich, Conflict of Laws (3d ed. 1949), § 9, pp. 15-17. If it was, the trial judgment was correct, 2 Beale, Conflict of Laws (1935), § 378.2, p. 1289, as the law of the place of wrong normally determines whether there is a cause of action for the wrong. The general question of characterization or classification of workmen's compensation problems for purposes of choice of compensation remedy in interstate situations has stirred a variety of responses in the decisions, the most common of which are the tort, contract and employment relation concepts. 2 Larson, op. cit., supra, § 87.21, p. 379; § 87.31, p. 385; § 87.41, p. 389. The tort theory is that workmen's compensation laws are a statutory substitute for tort liability, the consequence being that the lex loci delicti should govern. The contract theory is that the workmen's compensation law of the state where the employment contract is made is imported, by statutory "election," into that contract and is generally controlling. There is evidence of strong doctrinal support for that view *561 in the decisions of our courts, although there has not heretofore been a frontal consideration of the matter from a choice of law standpoint. See Gotkin v. Weinberg, 2 N.J. 305 (1949); Miller v. National Chair Co., 127 N.J.L. 414 (Sup. Ct. 1941), affirmed 129 N.J.L. 98 (E. & A. 1942); Stacy v. Greenberg, 9 N.J. 390 (1952); Buccheri v. Montgomery Ward & Co. and Bowers v. American Bridge Co., both supra; English v. Stokes Molded Products, 43 N.J. Super. 68, 76 (App. Div. 1956). The employment relation theory, described by Larson (op. cit., supra, § 87.41, p. 389), as "the most relevant to compensation theory and the least artificial," and in Comment, 23 Univ. of Chi. L. Rev., supra, at p. 521, as "more realistic," gives controlling weight to the law of the state wherein the employer-employee relationship is situated. But in this as well as the related field of the incidence of the full faith and credit clause of the Constitution numerous and complex variations in the kinds of factual contacts which can be found between a particular litigation and two or more states have practically defied attempts at doctrinal classification along symmetrical and logical lines and forced the resolution of particular cases on the basis of what is aptly described in Buccheri v. Montgomery Ward & Co., supra, as "an interest weighing approach" (19 N.J., at page 602), some of the relevant considerations being listed as "the place of employment contracts; the residence of the parties; the place of injury; the possibility of the workman becoming a public charge in the state seeking to award compensation." (Ibid.)
To return to the specific problem at hand, the emphasis of defendant's argument is that since the present action is one at common law in tort, not a claim for workmen's compensation, the substantive legal issue implicated is therefore necessarily one of tort and that consequently the conflict of laws solution should be achieved from a tort, rather than an employment-relation, or workmen's compensation, approach, thus calling for decision on the basis of the law of Pennsylvania. This at once evokes the reaction that the law of Pennsylvania referred to is not its common law of *562 tort liability, nor any statute addressed to the general reciprocal rights and duties of the parties in respect to the matter of negligence or due care, but its workmen's compensation act. Fuller consideration of the point calls for a close look at that act and the relevant provisions of its counterpart in this state.
The general scheme of Pennsylvania's workmen's compensation act, like our own, is elective, becoming operative in every hiring unless either party signifies the contrary in writing at the time of the hiring. Purdon's Pa. Stat. Annot. Tit. 77, § 461 (1952). But the Pennsylvania act further provides that "an employer who permits the entry, upon premises occupied by him or under his control, of a laborer or an assistant hired by an employe or contractor [elsewhere in the act defined as including a subcontractor to whom a principal contractor has sublet any of the work which such principal contractor has undertaken], for the performance upon such premises of a part of the employer's regular business entrusted to that employe or contractor," shall be conclusively presumed to have agreed to pay the laborer or assistant compensation as provided by the act, and the laborer to have agreed to accept it, unless the employer posts a notice to the contrary on the premises or the laborer so signifies by notice in writing to the employer. Purdon, op. cit., supra, § 462. Where the "statutory employer," as such general contractors are generally referred to in the Pennsylvania cases, is liable for compensation under the act, the direct employer's liability is thereby superseded unless otherwise expressly agreed between the contractor and subcontractor. Acceptance of the provisions either of § 461 or § 462, aforementioned, by an "employee," or a "laborer or assistant," respectively, bars any "rights to any form or amount of compensation or damages for any injury or death occurring in the course of the employment, or to any method of determination thereof," 77 P.S. Pa. § 481, other than as provided by the act. Thus, to recapitulate, the Pennsylvania statute substitutes the general contractor for the subcontractor as the employer for compensation purposes of the *563 subcontractor's hired employees, in the particular situation described, and gives him, in return, the usual employer's compensation statute immunity from liability in a common law action. It is not disputed that in the present case none of the parties took any of the steps which would prevent the effectuation of defendant's liability to plaintiff for compensation under the Pennsylvania act, if that act governs.
The theory of this provision of the Pennsylvania statute is that the general contractor and the employees of the subcontractor working on his premises are entering into "the relation of employer and employee" and that the act then applies, deriving from the "status of employer and employee," Swartz v. Conradis, 298 Pa. 343, 148 A. 529, 530 (Sup. Ct. 1929). Even when the subcontractor agrees to assume the compensation liability, the contractor is secondarily liable and his common law immunity continues. Capozolli v. Stone & Webster Engineering Corp., 352 Pa. 183, 42 A.2d 524 (Sup. Ct. 1945). The purpose of the provision was to make the person presumptively most responsible in a financial sense, the general contractor, answerable for the compensation claims of any workmen on the job, "to the end that employes of any degree doing work" under the original contract "might always be protected in compensation claims." Qualp v. James Stewart Co., 266 Pa. 502, 109 A. 780, 782 (Sup. Ct. 1920).
New Jersey treats this problem in an entirely different way. Its workmen's compensation act does not distinguish between a general contractor and any other stranger to the employment contract. Where a third person is liable to the employee, the right of statutory compensation is no bar to the action by the employee, N.J.S.A. 34:15-40. But the statute subrogates the employer or his insurance carrier to the claim against the third person, and entitles it to be reimbursed for medical expenses incurred and compensation payments made, out of the net proceeds (after deduction of costs and attorneys' fees) of any recovery by the employee from the third person. If the third person or his insurance carrier is served prior to any payment to the *564 employee with a notice that compensation has been applied for, it becomes their duty, before making payment to the employee in release of or upon a judgment for the third party liability, first to pay to the employer or its insurance carrier the amount of any compensation payments made or due to the employee. If within one year after the accident the injured employee has failed to institute an action or effect a settlement of his claim against the third party, the employer may do so in his name and be reimbursed from the proceeds for his outlay of workmen's compensation payments to the employee. N.J.S.A. 34:15-40. Our Supreme Court has described the purpose of this legislation to be "to set up a comprehensive plan within the structure of the Workmen's Compensation Act for regulating and marshaling the rights and responsibilities of the several parties concerned in compensation payments where, in the course of his employment, injury or death comes to a workman as the result of the fault of a third party." United States Casualty Co. v. Hercules Powder Co., 4 N.J. 157, 165 (1950).
The foregoing review of the statutory provisions of both states exposes the superficiality in the argument that the substantive law problem must be characterized as tort, for conflict of laws purposes, merely because, viewed in a vacuum, the present action is a conventional tort negligence suit. The immunity from general tort liability under the Pennsylvania statute is not a product of any legislative declaration of policy by that commonwealth that contractors, generally, should not be liable for negligence to employees of subcontractors. Such liability continues, unless, in the particular factual situations specified by the statute, and upon failure to reject the provisions of the act by either party, the new pseudo employment relation arises and the contractor's liability to the employee undergoes transmutation from the common law duty of due care to the absolute liability for scheduled compensation payments. It is clear to us that what Pennsylvania is here doing is more realistically, and, therefore, better, characterized as a regulation of the employment relationship than legislation in the general field *565 of tort liability. The avowed object of the legislation, according to the Pennsylvania courts, is to furnish added assurance of the receipt by an injured employee of the scheduled workmen's compensation by broadening the class of those made responsible for its payment. See, e.g., Qualp v. James Stewart Co., supra.
The New Jersey statutory provisions, while not weaving the negligent third person into the fabric of the workmen's compensation remedy as thoroughly as does the Pennsylvania act in relation to contractors, do, nevertheless, materially modify the pecuniary responsibility of an employer for compensation by allowing him resort to the proceeds of the recovery against the third person. The latter finances the operation of the workmen's compensation act in the particular case pro tanto. Thus, while, from the third person's viewpoint, the New Jersey act has left his tort liability unchanged, yet, from the standpoint of the employer and employee, the incidence of his continued liability looms large in the statutory scheme as to how much, and from whom, the employee shall be compensated, overall, on account of his injury. It is entirely accurate, therefore, to say that the New Jersey legislation on this subject is an integral part of its statutory workmen's compensation policy.
Taking the relevant statutory provisions of both states, in composite, we conclude that it is more realistic and accurate to characterize what they are doing as regulating the employment relationship in respect of compensation for work-connected injuries than legislating in the field of torts. The former is primary; the latter is only incidental.
The fact that here the choice of law is to be applied to the common law remedy rather than to the compensation remedy does not make the foregoing conclusion as to the characterization of the statutes irrelevant. If the question were whether the Pennsylvania statute must be accorded full faith and credit by our courts, the circumstance that here a common law action, rather than a compensation claim, is being asserted against the exclusiveness of the Pennsylvania remedy, would not constitute a material difference. *566 Carroll v. Lanza, 349 U.S. 408, 412, 75 S.Ct. 804, 99 L.Ed. 1183 (1955). Nor should it, in our opinion, where the question is choice of law. The clear implication of Stacy v. Greenberg, 9 N.J. 390 (1952), is to that effect. In that case two residents of New York, both employees of a New York corporation having its place of business in New York City, were being driven back to New York by a fellow employee from a business trip to Pennsylvania when there was an accident in this state. The Supreme Court held that an action for negligence would not lie at the instance of the injured passengers against the fellow-employee driver of the car. The New York workmen's compensation act precludes such an action; the New Jersey act does not. For reasons discussed later in this opinion the court held that it was required to give effect to the New York statute, where the employment contract was made, and thus deny recovery. Our present emphasis upon the decision is in reference to the determination that the New York workmen's compensation act applied notwithstanding that the statutory feature implicated was the exemption from common law liability rather than the availability of a compensation remedy.
A number of cases have held that where the workmen's compensation statute of the place where the accident occurs bars a common law action it will not be allowed elsewhere. Jonathan Woodner Co. v. Mather, 93 U.S. App. D.C. 234, 210 F.2d 868 (D.C. Cir. 1954); Williamson v. Weyerhaeuser Timber Co., 221 F.2d 5 (9 Cir. 1955); Bagnel v. Springfield Sand & Tile Co., 144 F.2d 65 (1 Cir. 1944); Mitchell v. J.A. Tobin Construction Co., 236 Mo. App. 910, 159 S.W.2d 709 (K.C. Ct. App. 1942). Other cases are to the contrary. Miller v. Yellow Cab Co., 308 Ill. App. 217, 31 N.E.2d 406 (App. Ct. 1941); Liberty Mutual Ins. Co. v. Goode Construction Co., 97 F. Supp. 316 (D.C.E.D. Va. 1951); cf. Anderson v. Miller Scrap Iron Co., 169 Wis. 106, 170 N.W. 275, 171 N.W. 935 (Sup. Ct. 1919). Most of these decisions are fairly mechanical determinations to the effect that, the problem being assumed to be one of tort *567 (or of contract), the law of the state of injury (or of the place of employment contract) was applicable. The only case in which a position corresponding to that urged by the plaintiff in the present case was explicitly considered by the court is the Jonathan Woodner case, supra. There the plaintiff argued that the asserted bar flowed, not from the tort law of the state of injury, but from its compensation act, and that the appropriately applicable compensation act was that of the jurisdiction in which the employment contract was made. The argument was rejected on the basis of the rationale that if an employer went to the expense of providing compensation, the employee, gaining thereby, must in fairness give up his negligence action against him (210 F.2d, at pages 873, 874). There was no really critical discussion of the issue raised  i.e., whether the substantive question functionally and characteristically bore upon the field of employment relations rather than that of tort and as to what choice of law was correct in the light of a conclusion on that question. We find no decided authority which undertakes a rational analysis of this question on its merits in a setting comparable with that before us and concludes for the tort characterization of the substantive law problem. Cf. Case Note 67 Harv. L. Rev., op. cit., supra (at p. 1282), which attempts to "reconcile" the existing decisions by a theory which would require that the compensation statutes of both the place of injury and the place of contract permit the common law recovery. We fail to discern any theoretical justification for such a reconciliation. It may be observed, as an aside, that the "rationale" expounded in the Jonathan Woodner case, supra, has no relevance whatever in a case like the present one, where the injured employee did not need or seek compensation coverage or benefits from the defendant, being amply covered by his immediate employer's compensation insurance. We adhere to the position that the particular matter before us belongs substantively in the employment relations field, rather than that of torts. On that basis we proceed to a consideration of the matter of appropriate choice of law.

*568 II.
For purposes of determining choice of law we are not concerned with a comparison of the merits of the public policy of our own statute, in respect to the liability here asserted, with that of the Pennsylvania statute. In this connection we need not determine whether the result of the application of the Pennsylvania statute offends our own public policy. Cf. Buccheri v. Montgomery Ward & Co., supra (19 N.J., at page 605); Bowers v. American Bridge Co., Inc., supra (43 N.J. Super., at pages 66, 67); Casteel v. Casteel, 45 N.J. Super. 338 (App. Div. 1957). Our sole present concern is with a doctrinally correct choice of law. Proceeding from the conclusion already arrived at that the substantive field involved is that of the regulation of employment relations, specifically in respect to compensation for injury at work, it seems self-evident that the choice should be the law of the state which has the preponderance of significant contacts with the relationship. Lorenzen refers to the influence of the consideration as to "the principal interest involved." "Territoriality, Public Policy and the Conflict of Laws," 33 Yale L.J. 736, 748 (1924). While the suggested criterion may not always have the desirable attribute of certainty of application and uniformity of result in this particular field (see Stumberg, Conflict of Laws (2d ed. 1951), p. 16), yet it must be acknowledged that some areas of the conflict of laws are inherently less susceptible of certainty in application or prognostication than others, workmen's compensation being a typical example. The search is for the rule best balanced in justice, logic and expediency, not necessarily the one most easily applied. Unquestionably the place of an injury to a workman has substantial relational significance to the employment status, cf. Pacific Employees Insurance Co. v. Industrial Accident Commission, 306 U.S. 493, 59 S.Ct. 629, 83 L.Ed. 940 (1939); Carroll v. Lanza, supra. But it can hardly be doubted that the significance of the situs of the accident here in question is substantially outweighed *569 by the significance of the contacts with the state wherein contractor, employer-subcontractor and employee resided, where the first two had their regular places of business, where the employment relationship was originally created and where the contractor and the plaintiff's employer contracted for the doing of the work at which plaintiff sustained his injury. That state was New Jersey. Moreover, it was in that state, and not Pennsylvania, where plaintiff has sought and has been awarded compensation. Presumably the compensation was paid by the plaintiff's employer, Tragle, or his insurance carrier, not by the defendant; and, under the New Jersey act, any recovery in the present action against defendant will go first to make whole Tragle or his insurance carrier for the compensation payments heretofore made to plaintiff. Application of the Pennsylvania act leaves Tragle and his insurance carrier without resort to a fund which New Jersey intended should be available to them to meet, or help meet, the compensation claim. We hold New Jersey is the state whose law should be applied here as the state having the preponderance of significant contacts with the employment relationship involved. Cf. Buccheri v. Montgomery Ward & Co., supra.
The result we have arrived at is strongly buttressed, if not compelled, by Stacy v. Greenberg, supra. There it was held that, notwithstanding that the lex loci delicti allowed the common law recovery, it would not be granted since the action was forbidden by the workmen's compensation law of the state where plaintiffs' employment contracts were made and where employer and employees resided. Were the rule as inexorable as defendant argues in the matter sub judice, recovery should have been allowed in the Stacy case, as there can be no logic in applying the rule of lex loci delicti to preclude a recovery when the state of injury says no, but refusing to apply it when the state of injury says yes. The court spoke in terms of "comity" toward the New York (employment state) statute (9 N.J., at page 396), but it was actually choosing the law of New York and, in effect, rejecting the negligence law of New Jersey *570 (state of injury), and this on the express ground that "the New York statute became an integral part of plaintiffs' employment contracts when those contracts were entered into in New York." It is true that in the Stacy case it was pointed out in the opinion that the New Jersey workmen's compensation statute had no application because the presence of the employees in the State was merely as transients en route back to New York City (9 N.J., at page 397) and that the case thus did not "present the complex problem of the application of conflicting workmen's compensation acts to an accident with which two or more states may have some legitimate concern * * *." But the reference, beyond reflecting the assumption that an exemption from a common law action provided in a compensation act may be regarded as an "application" of such an act, does not cast any additional light on the precise matter we deal with here.
Defendant also places reliance upon the Restatement, Conflict of Laws, § 401 (1948 Supp.). When section 401 was adopted in 1934 it provided that if an action in tort against the employer or a third person had been abolished by a workmen's compensation act of the place where the employment contract was made or of the place of wrong, no tort action was maintainable in any state. The 1948 amendment of the section eliminates the effect of the employment state's law as a bar. The reason for the change assigned in the explanatory comment is the decision in Pacific Employers' Insurance Co. v. Industrial Accident Commission, supra. However, that case held only that the state of injury might, within full faith and credit, award compensation without regard to the contrary provisions of the state of the employment contract. What a state may constitutionally do in disregard of the law of another state is not necessarily a doctrinal justification for a conflict of laws rule as to what it should do in that regard. Moreover, the Pacific Employers' case did not deal with common law remedies, the subject of section 401, but with compensation, and section 400 of the Restatement is the provision *571 which purports to deal with compensation. It may be a long time before the case law settles to the point where the many hypothetical combinations of fact are susceptible of any meaningful attempt at formalized restatement. In the meantime each new situation must be dealt with on its merits. The 1948 Restatement amendment aside, however, the Restatement rule as it stands is simply an approval of the mechanical "torts" approach to this problem which we have felt impelled to reject hereinabove as to the matter before us as not in accord with the realities as to the comparative purposes, scope and effect of the legislation involved in the two states. But see Parker v. Zanghi, 45 N.J. Super. 167, 173 (App. Div. 1957). We do not suggest that the law of the state of injury will never be chosen to control in this genus of action. We hold only that it does not ipso facto and immutably control, in disregard of the preponderance of the significant contacts between the employment relationship and the respective states involved; and that to choose the law of the place of injury in this case would prevent New Jersey from implementing its statutory policy with respect to an employment relation with which it has not only a legitimate but the primary concern.

III.
We deal briefly with defendant's tangential assumption, noted earlier herein, that the full faith and credit clause of the United States Constitution requires affirmance of the judgment, although we do not regard the question as properly raised. It is by now clearly established by decisions of the United States Supreme Court that in a workmen's compensation situation either the state where the contract of employment was made, Alaska Packers Association v. Industrial Accident Commission, 294 U.S. 532, 55 S.Ct. 518, 79 L.Ed. 1044 (1935) (as against the state where the work was to be performed and the accident occurred), or that in which the injury occurred, Carroll v. *572 Lanza, supra (as against the state where the employment contract was made and the plaintiff resided), may apply its own workmen's compensation statute without offending the requirements of the full faith and credit clause. Comment, 23 Univ. of Chi. L. Rev., op. cit., supra, at pp. 525, 529. And, as we have seen hereinabove, the Supreme Court finds it of no materiality, in this connection, whether the forum is applying the compensation remedy or the locally permitted common law remedy. Carroll (349 U.S., at page 412, 75 S.Ct. 804, 99 L.Ed. 1183). In the Alaska Packers case, supra, the employee had even agreed by written contract that the parties should be bound by the Alaska (state of injury) workmen's compensation law. Yet the state of employment contract, California, was permitted to apply its conflicting statute. The court held that only if "in the conflict of interests which have found expression in the conflicting statutes," the interests of the foreign state were "superior" to the interests of the forum state, would there be a rational basis for denying the courts of the forum state, in the name of full faith and credit, the right to apply the laws of that state (294 U.S., at page 549, 55 S.Ct., at page 524, 79 L.Ed. 1044). We have no doubt that the "interest" of New Jersey is "superior" to the interest of Pennsylvania in this conflict of statutes; certainly that the reverse is not true. We think that the policy of our own statute, if regarded as applying to the instant controversy via the application of principles of conflict of laws and the necessary subordinate determination that the predominance of significant contacts with the employment relation lies in New Jersey, suffices to shield this decision from the proscriptive effect of the constitutional guarantee of full faith and credit. We rule not out of a motive of discrimination against or hostility to the Pennsylvania law but because we find that New Jersey policy in favor of the allowance of this action coincides with what sound conflict of laws principles dictate should be the applicable result. And the determination herein is not intended as having a broader application than the specific field implicated. *573 Cf. Buzzone v. Hartford Accident and Indemnity Co., 23 N.J. 447, 458, 459 (1957). It is recognized that mere local policy differences concerning the effect of proper application of foreign law upon our own citizens will not as a general rule excuse disregard either of the law of conflict of laws or of federal constitutional requirements. Ibid.

IV.
We take passing notice of the alternative position of the plaintiff that he was not a statutory employee of the defendant within the intent of the Pennsylvania act. We do not find his argument on this aspect of the case persuasive. While the stipulation of facts before us does not fully illuminate the precise factual situation, particularly as to what defendant's "regular business" consists of, it may be inferred to be general construction or alteration work on buildings. The subcontract to Tragle was for a part of a contract for that kind of work on a job site over which it appears from the facts stipulated that defendant maintained control. Plaintiff's presence on that site in the circumstances was effective to render defendant a statutory employer within the act. We do not extend this opinion to discuss the Pennsylvania cases cited to us on the point, in view of our conclusion in favor of plaintiff on the conflict of laws issue.
Reversed.