168 N.J. Super. 187 (1979)
402 A.2d 264
GERALD NEHRA AND SUSANNE NEHRA, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
RUDOLF UHLAR, DEFENDANT-RESPONDENT, AND RUDOLF UHLAR, PLAINTIFF-RESPONDENT,
v.
SUSANNE UHLAR NEHRA, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 24, 1979.
Decided May 10, 1979.
*188 Before Judges LORA, MICHELS and LARNER.
Mr. John E. Finnerty argued the cause for appellant.
Mr. Rudolf Uhlar appeared pro se.
Mr. George Warren, guardian ad litem, argued pro se.
*189 The opinion of the court was delivered by LARNER, J.A.D.
This is an appeal by the mother of two children from a summary judgment in favor of the father in a custody proceeding. The trial judge refused to invoke jurisdiction to conduct a plenary hearing on the merits of the custody dispute.
This determination represents the culmination of years of litigation between the parents in three jurisdictions. A divorce judgment was entered in March 1972 in favor of the husband in the State of Michigan, wherein custody of the two children, born in 1966 and 1968, was awarded to the father. They remained with him in Michigan until February 1973. By this time both the father and mother had remarried. Shortly after her marriage the mother, without the father's knowledge or consent and in violation of the Michigan court order, brought the children to New York State where she set up a marital home with her new husband who was employed there.
Although the mother notified the father that the children were with her and that she did not intend to return them, she refused to reveal where she or they were located. After nine months of investigation, the father ascertained in December 1973 that the children were living in Oswego, New York, with their mother. Thereafter he visited them on several occasions in 1974 in the presence of the mother and her new husband, and he was permitted to take the children to Michigan for a visit after posting an appropriate bond.
When the father finally discovered the whereabouts of the children, the mother immediately instituted an action for custody in the New York courts. The husband appeared and contested her right to custody. After a plenary hearing the judge of the Family Court, on February 6, 1975, granted custody to the mother pursuant to its parens patriae jurisdiction upon a finding that there had been an extraordinary change of circumstances and that it was in the best interests of the children that they remain in her custody.
*190 The husband took an appeal from this determination,[1] and on April 14, 1977 the Appellate Division of the Supreme Court of New York reversed in a 3-2 decision, holding that custody should remain with the father pursuant to the prior Michigan custody judgment. In re Susanne U.N.N. v. Rudolf O.O., 57 A.D.2d 653, 393 N.Y.S.2d 472.
While this appeal was pending before the Appellate Division of the State of New York, the mother's husband, employed by IBM, was transferred to New Jersey and they moved here with the two children. In addition, during the pendency of the appeal and before its determination, the mother filed a complaint in the Chancery Division in April 1976 seeking a judgment of the New Jersey court granting custody to her. After the decision of the Appellate Division of New York she also processed an appeal to the Court of Appeals of New York, and custody of the children remained with her pursuant to a stay pending the appeal.
In response to the mother's New Jersey complaint, the father filed an independent complaint in the Chancery Division seeking an adjudication granting him custody pursuant to the order of the Michigan court.
Prior to the final resolution of the New Jersey litigation there were proceedings relating to child support and visitation of the children with the father in Michigan. During one of these hearings Judge Susser, noting that both parties had consented to jurisdiction, ordered that the children be delivered to the husband for visitation in Michigan and that the Passaic County Probation Department undertake an investigation relating to the question of custody.
On July 1, 1977 the father moved for summary judgment before Judge Susser based upon the determinations of the Michigan court and the Appellate Division of the State of New York. The motion was denied because of the pendency *191 of the appeal in the New York Court of Appeals, with the judge concluding that the New Jersey court should await the decision of the highest court of New York before resolving the issue of custody. In doing so Judge Susser noted that New Jersey had jurisdiction to determine the custody question in view of the bona fide residence of the children and the mother in this State, and the fact that the children had spent a substantial part of their formative years in the mother's custody. He particularly observed, "We are concerned with the emotional damage which may ensue by removal out of their present environment and present relationship."
Finally, he stated:
Should the Court of Appeals of New York affirm the Appellate Divison, it may be necessary to conduct a plenary hearing to determine if there are such changed circumstances as to require this court to take custody jurisdiction.

* * * * * * * *
This present case is not in such posture as to permit summary judgment. It would appear to this Court that in child custody cases courts should be more circumspect in granting such judgment.
There may be a need here for a plenary hearing to resolve genuine issues of fact.
The New York litigation was terminated on December 15, 1977 by an opinion of the Court of Appeals (Nehra v. Uhlar, 43 N.Y.2d 242, 401 N.Y.S.2d 168, 372 N.E.2d 4) which affirmed the order of the Appellate Division in awarding custody to the father in accordance with the Michigan judgment. The basis for this affirmance is summarized in the following excerpt from the opinion:
Applying these principles and considering the best interest of the children the father is entitled to custody because the Michigan court so decreed, because he is a fit parent, because the mother obtained the possession of the children by lawless self-help, because the transitory harm caused by disruption past and future was caused by the mother, and because there is insufficient showing that the harm to the children if they be returned to the father is any more irreparable than that caused by the mother in creating the situation *192 in the first instance. The courts cannot assure the happiness and stability of these children; that only their parents could have done, and, hopefully, can still do. [401 N.Y.S.2d at 173, 372 N.E.2d at 9]
As soon as this opinon was rendered the husband filed another motion for summary judgment in the New Jersey litigation, which motion was then heard by Judge Saunders. After listening to the respective arguments Judge Saunders granted summary judgment awarding custody to the father. We granted a stay of that order pending disposition of the appeal, and also appointed George Warren as guardian ad litem to represent the interests of the children.
Judge Saunders filed a comprehensive opinion in which he concluded that although the New Jersey court had jurisdiction to determine custody, the circumstances relating to the mother's unlawful removal of the children from Michigan and the custody determinations in favor of the father by the Michigan court and the New York Court of Appeals warranted a refusal to exercise such jurisdiction, citing Borys v. Borys, 76 N.J. 103 (1978).
In granting summary judgment the judge denied the mother's application for a plenary hearing, which was sought in order to determine whether the change of custody at this time would in fact be in the best interests of the children. The essence of the rationale underlying the determination below may be garnered from the following quotation from the opinion:
The litigation between the parties commenced in 1970. It was marked by full trials in two states, appeals to the highest Court of one state and was punctuated by a "kidnapping" and secreting of the children by the non-custodial parent. The litigation continues to the present in New Jersey. Eight years is enough! The welfare of the children will not be promoted by the continuation of this bitter litigation between the parents in yet a third state.
Both the appellant and guardian ad litem contend that the court erred in deciding the case via the route of summary *193 disposition, and that the matter should be remanded for a plenary hearing to adjudicate the issue of custody, based on the overriding criterion of what is in the best interests of the children.
It is well-established that the Full Faith and Credit Clause of the United States Constitution is not applicable to custody decrees, which are uniformly held to be subject to modification. New York ex rel, Halvey v. Halvey, 330 U.S. 610, 67 S.Ct. 903, 91 L.Ed. 1133 (1947); Borys v. Borys, supra, 76 N.J. at 109-115. In the latter case our Supreme Court opted for the minority rule represented by such cases as Casteel v. Casteel, 45 N.J. Super. 338 (App. Div. 1957), and Mrowczynski v. Mrowczynski, 142 N.J. Super. 312 (App. Div. 1976), to the effect that custody judgments, dealing with "ephemeral decisions about continuing relationships which are subject to constantly changing conditions" require a broad, flexible view of jurisdiction without "automatically giving custody decrees conclusive extraterritorial effect." See Borys, supra, 76 N.J. at 124. Thus, regardless of the determination by a foreign court, and regardless of the absence of a showing of changed circumstances, the courts of this State should not abdicate their parens patriae duty to decide a custody issue on the basis of the best interests of the children. See Casteel, supra, 45 N.J. Super. at 352; Borys, supra, 76 N.J. at 120.
We recognize that although the holding in Borys removes any compulsion to enforce a foreign custody decree, it permits a New Jersey court to decline jurisdiction and recognize a foreign decree where such a determination will "protect the child's interests." And such a result may be appropriate under some circumstances where the children are in this State as a result of child-snatching or disobedience of a sister-state's orders. Borys, supra, 76 N.J. at 125. See Vannucchi v. Vannucchi, 113 N.J. Super. 40 (App. Div. 1971), where the child was in New Jersey temporarily. However, as the Borys court pointedly observed:
*194 In deciding whether to adjudicate a custody action, the trial court should consider whether the child's welfare will be promoted by such adjudication. [76 N.J. at 126]
And as a corollary, of course, if a court concludes that the welfare of the children would be served by an adjudication on the merits, the ultimate decision as to custody must in turn also focus upon that which is in the best interests of the children and without regard to the foreign decree.
With respect to both of these inquiries, the welfare of the children is paramount. Their welfare should not be sacrificed on the altar of judicial punishment of a parent for her wrongdoing in removing the children from a foreign jurisdiction, or in violating the order of a foreign court. See Marriage of Settle, 276 Or. 759, 556 P.2d 962 (Sup. Ct. 1976); Nelson v. District Court, 186 Colo. 381, 527 P.2d 811 (Sup. Ct. 1974); Kennedy v. Carman, 471 S.W.2d 275, 287-288 (Mo. Ct. App. 1971); In re Guardianship of Rodgers, 100 Ariz. 269, 413 P. 2d 744 (Sup. Ct. 1966). See also, In re Shaheen, 127 N.J. Eq. 75, 76-77 (E. & A. 1939); In re Adoption of Child by I.T. and K.T., 164 N.J. Super. 476, 486 (App. Div. 1978).
In light of the foregoing examination of applicable law, it is our studied opinion that the trial judge erred in declining jurisdiction and granting summary judgment.
A significant factor in reaching this conclusion is that the judge relied upon a Michigan judgment entered in 1972 and a New York Court of Appeals decision in December 1977 based upon a record made before the New York trial court in 1974.
The mere passage of so many years during which the children, now ages 11 and 12, have remained in the custody of a mother who has brought up and nurtured them during their entire lifetime (except for 11 months between March 1972 and February 1973), is sufficient in itself to mandate a full inquiry by way of a plenary hearing. The disruptive potential of a decision to remove the children from their *195 mother's care at this time is so apparent that a full factual exploration under the paramount "best interests" standard is clearly appropriate. See Sorentino v. Family & Children's Soc. of Elizabeth I, 72 N.J. 127, 132-133 (1976) and II, 74 N.J. 313, 319-320 (1977). And whether the delay has resulted from the actions of the mother or father, or from circumstances inherent in protracted litigation, the real problem which transcends all other considerations still exists  namely, whether the removal of the children from their present stable environment will harm them psychologically with an adverse effect upon their future development. See In re Adoption of Child by I.T. and K.T., supra, 164 N.J. Super. at 489-490; Goldstein, Freud and Solnit, Beyond the Best Interests of the Child (1973).
In addition to the obvious element of disruption in removing the children from their mother's custody at this time, the record herein amply supports a prima facie showing which warrants a plenary hearing. The report of a psychologist attached to the Passaic County Diagnostic Center deals with interviews with the children pertaining to visitation with their father in Michigan and is quite revealing as to the feelings of these children toward their father. The expert concluded:
It is the impression of this examiner that, given the intensely negative feelings these children are expressing, their interests will best be served by stabilizing their emotional environment in whatever ways possible. It seems likely that requiring Sandra and Marke to visit with their father against their wishes can only increase their conflicts and polarize the situation further.
A similar conclusion is found in the report of September 22, 1976 of Marcie Berman, Senior Probation Officer, who advised Judge Susser that the children strongly objected to visiting their father in the environment of his home in Michigan with his new wife and new children, although they voiced no objection to visitations with him in New Jersey.
*196 Judge Alterman's finding in April 1977 after interviewing the children during an interlocutory hearing on visitation is also significant:
And I believe from the reactions of Sandy and Marke to my questions, and in the discussion that we had to compel them to go to Michigan would be cruel at this time.
Because of such a record, and the other reasons expressed herein, the trial judge should have held a plenary hearing. The summary disposition was inappropriate.
We do not overlook nor condone the actions of the mother, or the fact that granting custody to her would in effect reward her for utilizing unlawful self-help in defying the orders of other courts and engaging in forum shopping by invoking the jurisdiction of courts of three states. Nevertheless, the paramount issue before the trial court and this court is necessarily the welfare of the children rather than the tactics of their parent. Thus, despite the improprieties of the mother and their impact upon the rights of the father, the court must primarily concern itself with the children and their welfare in this tragic and unfortunate custody struggle.
We therefore reverse and remand the matter for a full evidentiary hearing, consistent with this opinion, in order to determine whether the welfare of the children under current facts warrants that jurisdiction should be declined, and if not, whether their best interests would be served by awarding custody to the mother or father.
We do not retain jurisdiction.
NOTES
[1] The appeal, although dismissed on procedural grounds on May 11, 1976, was subsequently reinstated.