THOMPSON, J.,
concurring specially.
I reluctantly concur because the trial court’s order is supported by testimony and the record. Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980); Dinkel v. Dinkel, 322 So.2d 22 (Fla.1975). I cannot say that the trial court abused its discretion. However, I write to express my concern regarding the appearance that the mother’s criminal behavior is being rewarded.
The facts of this case have been reported in Ayyash v. Ayyash, 700 So.2d 752 (Fla. 5th DCA 1997). In that case, this court reversed and remanded the order *692 which placed two minors in the custody of their mother after she violated a court order and absconded with the children for more than six years. The circuit court had awarded temporary custody to the father during a dissolution action. The mother, with the help of her family, “fled the state, fraudulently obtained a false birth certificate and a driver’s license in the name of a deceased woman, and successfully concealed the children from their father for more than six years.” Ayyash at 753. After remand, the children resided with their father, his wife (their stepmother) and the father and stepmother’s two children for almost one year. During that time, a Guardian Ad Litem (GAL) was appointed to represent the children and the GAL hired a psychologist to assist with an evaluation of the family. The GAL interviewed more than 50 witnesses and reviewed the children’s school and medical records. The psychologist met with both of the parents and the children and reviewed records. After discussing the improvement the children had made in school and their adjustment to their new environment, the GAL and the psychologist recommended that the children return to live with their mother in Virginia with liberal visitation by the father.
The father testified that he had purchased a larger home with four bedrooms, so that the girls would have a bedroom. He changed his hours at work, so he could spend more time with his children. Moreover, he also testified that because the two girls were reading below grade level when they moved to his home, he spent additional time tutoring them and their reading skills improved.
The trial court spoke with the children separately and heard the testimony from the mother about her recent marriage. The trial court also examined a photo album created by the mother. After stating it was a close case, the trial court entered a thorough order placing the children with the mother. The trial court noted that the girls had bonded with their mother and it was in their best interest to return to her home in Virginia.
What is troubling is that the mother had six years to bond with the children because of her criminal activity which has gone unpunished and which has effectively deprived the father of access to his children. The mother violated state and federal laws when she absconded with the children. The Uniform Child Custody Jurisdiction Act has been adopted and codified as Florida law to discourage parental abductions in custody cases. See §§ 61.1302-1348, Fla. Stat. (1997). The mother also violated federal law, The Parental Kidnapping Prevention Act, which makes parental abduction a federal crime. See 28 U.S.C. 1738 (1988). To date, she has not been prosecuted for kidnapping, a crime she admitted under oath. In addition to kidnapping, the mother also violated at least two state laws: interference with child custody, section 787.03(2), and removing and concealing minors, section 787.04. Again, to date, she has not been prosecuted for those crimes.
The trial court stated that this was a close case until it reviewed the photo album and heard from the children that they wanted to live with their mother. Evidently, since its determination of the residential parent was close, the court placed a great deal of importance on the children’s testimony. My concern is the precedent this case establishes: that a parent who successfully kidnaps children in violation of a court order may be rewarded for successfully avoiding efforts of the father and police to locate her.
I accept the argument that the mother’s behavior does not automatically disqualify her from consideration as the primary residential parent. In Nehra v. Uhlar, 168 N.J.Super. 187, 402 A.2d 264 (App.Div.), certification denied, 81 N.J. 413, 408 A.2d 807 (1979), also a custody battle involving child snatching, the court made the following observation:
We do not overlook nor condone the actions of the mother, or the fact that *693 granting custody to her would in effect reward her for utilizing unlawful self-help in defying the orders of other courts and engaging in forum shopping by invoking the jurisdiction of courts of three states. Nevertheless, the paramount issue before the trial court and this court is necessarily the welfare of the children rather than the tactics of their parent. Thus, despite the improprieties of the mother and their impact upon the rights of the father, the court must primarily concern itself with the children and their welfare in this tragic and unfortunate custody struggle.
Id., 402 A.2d at 268-269. This quotation follows the court’s earlier observation that the welfare of the children is paramount and “should not be sacrificed on the altar of judicial punishment of a parent for her wrongdoing in removing the children from a foreign jurisdiction, or in violating the order of a foreign court.” Id. at 267. These observations are as applicable in the instant case as they were in Nehra. Yet, I cannot help but think that the father is being penalized because the mother “bonded” in violation of a court order and in spite of efforts by the father to locate his children and have them returned.