Aaron JOHNSON, Petitioner, Appellant,

v.

Kimberly Letrice MURRAY, a/k/a Kimberly Letrice Smith, Respondent.

No. C7–01–480.

Supreme Court of Minnesota.

July 18, 2002.

Aaron Johnson, pro se.

Kimberly Letrice Murray, pro se.

Mary Catherine Lauhead, St. Paul, Michael D. Dittberner, for Family Law Section MN State Bar Ass'n.

Fredrikson & Byron, P.A., Richard D. Snyder, Minneapolis, Gail Chang Bohr, St. Paul, for Children's Law Center of MN.

ANDERSON, Paul H., Justice.

## OPINION

Aaron Johnson commenced an action in Minnesota to determine the paternity and custody of Aaron Jamine Junior Johnson (A.J.). Prior to commencing the action, Johnson obtained physical custody of A.J. from A.J.'s maternal grandmother following her request that Johnson take custody. At the time, A.J. was living with his grandmother in Michigan. The district court dismissed Johnson's action on the grounds that the court lacked personal jurisdiction over A.J.'s mother. On appeal, the court of appeals reversed and remanded the case to the district court for consideration of a number of issues, including whether the district court had subject matter jurisdiction over the custody dispute under Minnesota's codification of the Uniform Child Custody Jurisdiction Act (UCCJA).

On remand, the district court dismissed Johnson's paternity claim on the grounds that A.J. had not been joined as a party. On the custody claim, the court found that it did not have subject matter jurisdiction under the UCCJA because there was insufficient evidence to determine whether another state had jurisdiction and there was not a significant connection between A.J.'s mother and Minnesota. The court stated that it also could have declined subject matter jurisdiction under the UCCJA's unclean hands provision due to Johnson's wrongful conduct of taking physical custody of A.J. without his mother's consent. Johnson again appealed and the court of appeals reversed on the issue of paternity and affirmed on the issue of

custody. Having prevailed on the issue of paternity, Johnson appealed only the matter of subject matter jurisdiction. We granted Johnson's pro se petition for review to determine whether the district court had subject matter jurisdiction over the custody dispute under the UCCJA. We reverse.

In July 1999, appellant Aaron Johnson obtained physical custody of the then 8–year–old A.J. At this time, A.J. resided with his maternal grandmother in Michigan. The grandmother had contacted Johnson about visiting A.J. Johnson subsequently went to Michigan and returned to his home in Minnesota with A.J. One month later, A.J.'s mother, respondent Kimberly Letrice Murray, a/k/a Kimberly Letrice Smith, who previously had physical custody of A.J., came to Minnesota to work as part of Austin Diversified Products' seasonal sales staff. On August 27, 1999, a Hennepin County Sheriff's employee served Murray with a summons and petition for custody determination, interrogatories, and requests for admissions on behalf of Johnson. In these documents, Johnson alleged that he was A.J.'s father and was seeking full custody of A.J. He also alleged facts supporting subject matter jurisdiction over the custody issue under the UCCJA.

On September 29, 1999, Johnson moved for default judgment. The same day, he applied for an ex parte temporary restraining order against Murray because she had threatened to take A.J. away from him and had told him that he would never see A.J. again. The district court denied the request for the temporary restraining order. On September 30, Murray and her attorney, with the assistance of the Benton County Sheriff, retrieved A.J. from Johnson's custody. Johnson has neither heard from nor seen A.J. or Murray since this date.

The day after Murray regained custody of A.J., Johnson obtained an ex parte temporary custody order. That same day, he served Murray by mail addressed to her employer with notice and motion for default judgment. On October 6, 1999, Johnson filed a notice of motion and motion for adjudication of parenthood accompanied by an affidavit in which he claimed to be A.J.'s father.

The district court held a hearing on Johnson's motion for default judgment on October 13, 1999. At the hearing, Johnson argued that the court should issue a default judgment and award him custody of A.J. because there was no response by Murray to the initial summons and complaint or petition. Murray did not appear at the hearing, but her attorney was present and contested the court's personal and subject matter jurisdiction. It was at this hearing that Murray's attorney acknowledged that Johnson had the grandmother's consent to take physical custody of A.J. On October 26, 1999, the court issued an order dismissing Johnson's motion for adjudication of parenthood on the grounds that the court lacked personal jurisdiction over Murray. The court did not address Johnson's motion that the court should issue a default judgment and award Johnson custody.

On August 7, 2000, the court of appeals reversed and remanded on the issue of personal jurisdiction. The court concluded that certain findings of fact by the district court were clearly erroneous and permitted the district court to reopen the record on remand. Further, the court of appeals ordered the district court to consider on remand Johnson's motion for default judgment and Johnson's motion to deem requests for admissions admitted. Finally, although the district court did not determine whether it or any other state had jurisdiction under the UCCJA, the court of

appeals addressed the issue of subject matter jurisdiction.

The court of appeals noted that Johnson had alleged that A.J. had no permanent home, moved from state to state, never lived in a state for more than four months, attended five or more schools in one year, could not remember the names of any of his teachers or of any of the schools he attended, was in the third grade but performed at a first-grade level, and was exposed to drug use and domestic abuse. The court stated that if these allegations were true, it was in A.J.'s best interests for some state to assert jurisdiction to determine his custody status. The court went on to state that given the interstate nature of the custody dispute, the fact that Johnson, the alleged father, lives in Minnesota and the fact that A.J. lived in Minnesota and attended school in Minnesota means that Minnesota might be able to assert jurisdiction under the UCCJA. However, the court concluded that the record lacked the factual findings required to support the exercise of UCCJA jurisdiction and remanded for specific findings on this issue.

On November 15, 2000, the district court held an evidentiary hearing on the remanded issues. Johnson was represented by an attorney and testified, but neither Murray nor her attorney appeared. On January 24, 2001, the court found that Minnesota had personal jurisdiction over Murray, but dismissed Johnson's action to determine paternity due to Johnson's failure to join A.J. as a party, denied Johnson's motion for default judgment, and found that Minnesota lacked subject matter jurisdiction over the custody dispute.

The district court made the following findings of fact, some of which were phrased only in terms of what Johnson alleged or testified to. In 1988, Johnson and Murray met each other while employed at Austin Diversified Products. On June 27, 1991, Murray gave birth to A.J. in Eugene, Oregon. A.J.'s father was not identified on the birth certificate. Johnson alleged that during the next four years, Murray, Johnson, and A.J. resided together and that he helped raise A.J. Johnson testified that during those four years, Johnson and Murray were employed by Austin Diversified Products and moved from state to state selling cleaning products, living in motels, and doing drugs. Johnson testified that the longest period of time they would stay in one place was for about six months each winter when they would stay in California. However, the court also found that Johnson stated in an affidavit that to the best of his knowledge, A.J. had never lived in a state for more than four months. Johnson also stated in an affidavit that while he was employed by Austin Diversified Products and cohabitated with Murray, the longest time they lived in any one location was four months.

The district court found that in May 1995, the parties separated and A.J. remained with Murray. The court found that Johnson alleged that from October through December 1995, A.J. resided with Johnson in Oklahoma, Minnesota, and California. The court found that Johnson testified that in December 1995 he dropped A.J. off with Murray in California and then moved to Minnesota, where he has continued to reside. In July 1999, A.J.'s grandmother contacted Johnson to request that he come to Michigan to take A.J. to Johnson's home in Minnesota. The court found that Johnson traveled to Michigan to pick up A.J. based on the grandmother's consent. Johnson then took physical custody of A.J., albeit without Murray's permission. A.J. lived with Johnson until September 30, 1999, when Murray regained physical custody of A.J. with the aid of the Benton County Sheriff.

The district court concluded that Johnson was the presumed father of A.J. and that in a child custody action by a presumed father, the child must be joined as a mandatory party. Because A.J. was not made a party, the court dismissed the paternity action. The court also concluded that under the UCCJA, it did not have subject matter jurisdiction to make a custody determination. Finally, the court denied Johnson's motion for default judgment.

In a memorandum attached to its order, the district court further explained its conclusions of law. With respect to the custody issue, the court stated that under the UCCJA, it can exercise jurisdiction if (a) Minnesota is the home state of the child or the child's home within six months before commencement of the proceeding, (b) it is in the child's best interests that a Minnesota court assume jurisdiction, (c) the child is physically present in Minnesota and there are emergency conditions, or (d) no other court would have jurisdiction or will exercise jurisdiction. The court found that it could not exercise home state, best interests, or emergency jurisdiction. However, the court noted that it could exercise jurisdiction under the UCCJA's default or vacuum provision if no court of any other state would have home state, best interests, or emergency jurisdiction. The court then went on to speculate that California might be able to exercise subject matter jurisdiction. The court stated:

Aaron Johnson testified that every year while employed at Austin Diversified he stayed in California up to six months. California could be the child's home state. Temporary absences are counted as part of the six-month residency requirement. Moreover, about one out [of] three years, Aaron Jamine Jr. Johnson would stay with his grandmother for up to three months over the winter season. This could count a[s] part of the California residency requirement for

California. However, this Court cannot, on the evidence before it, conclude that no other State would have jurisdiction either in the July–September 1999 period or the November 2000 period.

Although the district court speculated regarding whether California might be able to exercise jurisdiction, the court found that there was insufficient evidence before it to conclude that no other state would have jurisdiction over the custody dispute. The court also found that, absent Murray's consent or an adjudication of paternity, Johnson did not have a legally recognized right to relocate A.J. to Minnesota and then commence a custody proceeding. For these reasons, the court concluded that it did not have subject matter jurisdiction over the custody issue under the UCCJA's default provision. Finally, the court stated that it could have declined subject matter jurisdiction under the UCCJA's unclean hands provision due to Johnson's "broad and exaggerated" claims regarding A.J., his "questionable" credibility, and his wrongful conduct of taking A.J. from his grandmother without Murray's consent.

Johnson appealed pro se, arguing that the district court erred in dismissing his custody and paternity action. The court of appeals reversed the district court on the dismissal of the paternity action and affirmed the district court's determination that Minnesota lacked subject matter jurisdiction over the custody issue. The court of appeals agreed with the district court that there was no basis for Minnesota to assume home state, best interests, or emergency jurisdiction of the custody action. The court also concluded that the district court properly exercised its discretion under the unclean hands provision. It concluded that it was proper to decline jurisdiction under the default provision because Johnson took A.J. from Michigan

without first being adjudicated his father and without Murray's consent. The court stated that regardless of Johnson's intentions, such conduct went against the purpose of the UCCJA and was tantamount to abduction. Thus, the court of appeals held that the district court did not err in declining to exercise jurisdiction even though the district court did not determine whether another state could exercise jurisdiction.

Johnson filed a pro se petition with our court, seeking review of the issue of whether the district court erred in determining that under the UCCJA it did not have subject matter jurisdiction over custody. Murray did not respond to the petition or participate in this appeal. The Children's Law Center of Minnesota and the Family Law Section of the Minnesota State Bar Association participated as *amici curiae* in support of Johnson.

### I.

■■■ The question before us is whether the district court erred in finding that it lacked subject matter jurisdiction over Johnson's custody claim under the UCCJA. Subject matter jurisdiction is a question which we review de novo. *Handicraft Block Ltd. P'ship v. City of Minneapolis*, 611 N.W.2d 16, 19 (Minn. 2000). Statutory interpretation is also a question of law subject to de novo review. *Hibbing Educ. Ass'n v. Pub. Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn. 1985). Uniform laws are interpreted to effect their general purpose to make uniform the laws of those states that enact them. Minn.Stat. § 645.22 (2000). Accordingly, we give great weight to other states' interpretations of a uniform law. *State v. Vail*, 274 N.W.2d 127, 132 n. 9 (Minn.1979).

Under Minn.Stat. § 518A.03 (1998),[1] Minnesota's codification of the UCCJA, there are four bases for a Minnesota court to assert subject matter jurisdiction over a custody matter: home state jurisdiction, best interest of the child jurisdiction, emergency jurisdiction, and default or vacuum jurisdiction. With minor technical variations, section 518A.03's jurisdiction provisions are the same as those of the uniform law upon which they are based.[2] *Compare* Minn.Stat. § 518A.03 with Uniform Child Custody Jurisdiction Act § 3, 9 U.L.A. 307–08 (1999). Minnesota's default jurisdiction provision grants jurisdiction if:

> (1) it appears that no court in another state would have jurisdiction under prerequisites substantially in accordance with clause (a) [home state jurisdiction], (b) [best interest jurisdiction], or (c) [emergency jurisdiction], or a court of another state has declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child, and (2) it is in the best interest of the child that a court of this state assume jurisdiction.

Minn.Stat. § 518A.03, subd. 1(d) (1998).

Minnesota's UCCJA also grants the district court the discretion to decline jurisdiction on the basis of petitioner's conduct. Minnesota Statutes § 518A.08, subd. 1 (1998) provides:

---

1. Minnesota Statutes Chapter 518A, Minnesota's codification of the UCCJA, was repealed effective January 1, 2000, and replaced by the Uniform Child Custody Jurisdiction and Enforcement Act. Act of April 20, 1999, ch. 74, §§ 1–20, 1999 Minn. Laws 200, 200–16 (codified at Minn.Stat. ch. 518D (2000)).

2. For example, § 518A.03, subd. 1(d) (1998), the default jurisdiction provision, differs from Uniform Child Custody Jurisdiction Act § 3(a)(4), 9 U.L.A. 307–08 (1999) in that the state statute's subdivisions are numbered differently, the word "state" is not capitalized, and it refers to "a court of another state" rather than "another state."

If the petitioner for an initial decree has wrongfully taken the child from another state or has engaged in similar reprehensible conduct the court may decline to exercise jurisdiction if this is just and proper under the circumstances.

This "reprehensible conduct" or "unclean hands" provision is identical to section 8 of the uniform law. *Compare* Minn.Stat. § 518A.08, subd. 1, with UCCJA § 8, 9 U.L.A. 526 (1999).

We agree with the district court that it lacked jurisdiction over the custody issue under the UCCJA's home state, best interest, and emergency jurisdiction provisions. Accordingly, we focus our analysis on whether the court erred in declining jurisdiction under the default provision.

In evaluating whether default jurisdiction exists, a court must determine whether "it appears that no court in another state would have jurisdiction," whether another state has declined to exercise jurisdiction, and whether it is in the best interest of the child for a Minnesota court to exercise jurisdiction. Minn.Stat. § 518A.03, subd. 1(d). A key indicator of whether it would appear that another state could assert jurisdiction is whether another state would have jurisdiction if an action had been instituted in that state. *Peloso v. Botkin,* 144 Vt. 461, 479 A.2d 156, 158–59 (1984). The best interest of the child as used in the default provision "refers to a choice of a forum, not to the fitness of the parents." *State ex rel. Rashid v. Drumm,* 824 S.W.2d 497, 503 (Mo.Ct.App.1992). If there is no other forum that can and will adjudicate custody, it is in the best interest of the child that some state have the ability to adjudicate custody matters over the child. *Reed v. Reed,* 62 S.W.3d 708, 715 (Mo.Ct.App.2001); *see In re Marriage of Medill,* 179 Or.App. 630, 40 P.3d 1087, 1092 (2002). A court commits error if it determines it had no jurisdiction without considering the best interest of the child

with respect to a forum. *Rashid,* 824 S.W.2d at 502.

Here, Johnson was filing his first petition for custody. Under such circumstances, it was reasonable for the district court to have assumed that another state had not declined to exercise jurisdiction. However, the court did not make a finding as to whether it appeared that no other state would have jurisdiction. The court did speculate that California might be able to exercise home state subject matter jurisdiction over the custody dispute, but stated that it could not, "on the evidence before it, conclude that no other State would have jurisdiction." Moreover, the court did not address whether it was in A.J.'s best interest for a Minnesota court to exercise jurisdiction as it was required to do by statute.

Based on the record before us, we conclude that the court abused its discretion in failing to make findings regarding (1) the availability of another state forum and (2) the best interest of the child. Such findings are mandated by section 518A.03, subd. 1(d). We also conclude that it is in A.J.'s best interest that some forum be available to adjudicate custody because, under the facts here, there is no other forum that can and will adjudicate custody. Further, because the court identified no other state that had jurisdiction and the record does not indicate a substantial presence in any state, we conclude that no other state had jurisdiction. Therefore, we hold that the district court erred when it found that it did not have jurisdiction over the custody dispute under the UCCJA's default provision.

## II.

Having concluded that the district court had jurisdiction under the UCCJA's default provision, we now consider whether the district court has the discretion to

decline jurisdiction under the unclean hands provision. The court found that even if it did have jurisdiction under the default provision, it could decline jurisdiction under the unclean hands provision. Minnesota Statutes § 518A.08 provides that "[i]f the petitioner for an initial decree has wrongfully taken the child from another state or has engaged in similar reprehensible conduct the court may decline to exercise jurisdiction if this is just and proper under the circumstances." The comments to the uniform law state that under the unclean hands doctrine, courts refuse to assume jurisdiction "when the petitioner has abducted the child or has engaged in some other objectionable scheme to gain or retain physical custody of the child in violation of the decree." UCCJA § 8 cmt., 9 U.L.A. 526–27 (1999).

Nevertheless, the comments to the uniform law emphasize that "when adherence to this rule would lead to punishment of the parent at the expense of the well being of the child, it is often not applied." *Id.; see also Bergeron v. Bergeron,* 492 So.2d 1193, 1203 (La.1986) (stating that "If the best interests of all children are to be served * * * [t]he imperative to discourage abduction and other violations of custody orders may, in extraordinary circumstances, be subordinated to the paramount concern in all custody matters for the welfare of the child."); *Rashid,* 824 S.W.2d at 502 (stating that the unclean hands provision "is a discretionary ground for denying jurisdiction and does not supersede the best interests of the child" and that "[t]he paramount issue is the welfare of the child rather than the tactics of the parents."). *See also Snow v. Snow,* 369 N.W.2d 581, 583 (Minn. App.1985); *O'Neal v. O'Neal,* 329 N.W.2d 666, 669 (Iowa 1983); *Nehra v. Uhlar,* 168 N.J.Super. 187, 402 A.2d 264, 267 (1979); *Van Houten v. Van Houten,* 156 A.D.2d 694, 549 N.Y.S.2d 452, 454 (N.Y.App.Div. 1989). Thus, the language of the statute and the comments indicate that a district court, when applying the unclean hands provision, must not only consider whether a petitioner's conduct was wrong or reprehensible, but must also consider whether declining jurisdiction is proper under the circumstances and in the best interest of the child.

Here, the district court found that Johnson engaged in wrongful conduct in taking A.J. to Minnesota without Murray's permission. But this is not a case where the petitioning parent abducted the child or where the parent sought a favorable forum to adjudicate custody. Johnson took custody of A.J. after A.J.'s grandmother requested that he take A.J. to his home in Minnesota. There is no evidence that Johnson took custody of A.J. and brought him to Minnesota to find a favorable forum. In fact, Johnson had lived in Minnesota for nearly four years. Therefore, we conclude that the court abused its discretion in finding that Johnson wrongfully gained custody of A.J. The court also abused its discretion in speculating that it could exercise its discretion to decline jurisdiction under the unclean hands provision without considering whether exercising jurisdiction would be in A.J.'s best interest. Section 518A.08 requires a court to consider whether declining jurisdiction is just and proper under the circumstances and there is no indication that the court did so here. Moreover, we conclude that it was just and proper under the circumstances, i.e., in A.J.'s best interest, that some forum, in this case Minnesota, adjudicate custody. Therefore, it would be error for the court to decline jurisdiction under the unclean hands provision. *See Rashid,* 824 S.W.2d at 502; *Nehra,* 402 A.2d at 268–69; *Van Houten,* 549 N.Y.S.2d at 454.

We hold that, under the record before us, the district court has jurisdiction over

the custody dispute under the UCCJA's default provision and cannot decline jurisdiction under the unclean hands provision. We therefore reverse and remand for proceedings consistent with this opinion.

Reversed.