NORTHERN STATES POWER COMPANY, Plaintiff,

v.

GAS SERVICES, INC., Appellant,

Thomas A. Foster, et al., Respondents,

Howard Avista Energy, L.L.C., a Washington limited liability company, Defendant.

No. A04–913.

Court of Appeals of Minnesota.

Dec. 28, 2004.

Jan Stuurmans, Minneapolis, MN, for appellant.

Robert T. Scott, Thomas A. Foster, Minneapolis, MN, for respondents.

Considered and decided by KLAPHAKE, Presiding Judge; STONEBURNER, Judge; and HUSPENI, Judge.*

## OPINION

HUSPENI, Judge.

Respondent, an attorney, moved the district court to establish an attorney lien on funds to which the rights of appellant, his client, were then being litigated and on funds appellant received from an arbitration award in a federal action. The district court established a lien for 24% of the arbitration award plus interest and ordered that 24% of the funds still subject to litigation be held pending resolution of the litigation. Appellant challenges the award. Because we conclude that the district court had jurisdiction to establish the lien under Minn.Stat. § 481.13 (2002) and established the lien in an appropriate amount, we affirm.

## FACTS

In 1999, appellant Gas Services, Inc., through its owner and sole agent Manjit Bajwa (collectively, Bajwa), hired attorney Thomas A. Foster of Thomas A. Foster & Associates, Ltd. (collectively, Foster), to represent it in an action in the federal district court of Minnesota (the federal action) to recover about $2,000,000 from a Michigan corporation, Howard Avista Energy (Howard). While this action was pending, Northern States Power Company (NSP) brought an interpleader action in Ramsey County District Court (the state action) against Bajwa and Howard to determine which of them should receive $600,000 held by NSP. Foster also represented Bajwa in the state action, which was stayed pending resolution of the federal action.

Five documents are relevant to the fee dispute that resulted from Foster's representation of Bajwa. The first, headed "Employment Agreement," was signed and dated by Foster on March 3, 1999, and by Bajwa on June 30, 1999. It provided for a 16% contingency fee if the federal action was settled during discovery, 25% if it was settled prior to trial, and 33% if it went to trial.

The second, headed "Agreement," was signed by both Bajwa and Foster on February 26, 2001. It acknowledged that the federal action had been resolved through arbitration and provided that the contin-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. Art. VI, § 10.

gency fee would be 24% of the gross award.

The third, headed "Agreement[:] Arbitration of Attorney Fees," was signed by both Bajwa and Foster on October 10, 2001. It provided that (1) their attorney fee dispute would be submitted to a particular district court judge, and if he declined to arbitrate, to another named district court judge; (2) the agreement pertained only to GSI's action against Howard, not to GSI's action against NSP, for which Foster was owed no fees; and (3) the arbitrator's decision would be binding and non-appealable.

The fourth, handwritten by Bajwa, dated March 13, 2002, and signed by Bajwa and Foster, recited that (1) the arbitrators in the underlying action had awarded GSI approximately $2.8 million; (2) the award had been vacated by the federal district court; (3) Bajwa and Foster agreed that a major law firm should handle the appeal to the Eighth Circuit; (4) Foster had an agreement whereby he would receive 24% of the gross recovery, excluding the $600,000 recovered as the result of an interpleader action brought by NSP; and (5) the parties had had a fee dispute in August 2001 that they agreed to resolve by arbitration, but this agreement resolved all past fee disputes. The agreement provided that (1) Foster's fee would be reduced from 24% to 12%; (2) Foster would be responsible, but receive no additional fee, for collection, further arbitration or trial, and release of the $600,000 in the NSP action; and (3) Foster would handle, for a contingency fee of 33%, a further action that GSI would bring against NSP.

The fifth document is a letter from Bajwa to Foster dated April 5, 2002, stating:

> [W]e had discussed your fee schedule as it pertains to getting [one of two large law firms] to join us for legal representation during [a]ppeal [to the Eighth Circuit]. We **do not** have either firm under contract....
>
> You have reduced your fee in anticipation of an agreement with one of these firms. I contacted two other firms and they both refused to consider a "contingency" arrangement. So, we are not certain that we can find representation that will fit our need to pay on a "contingency" basis. In short, we have no agreement with a third party and no proposals either.
>
> I am concerned that we will not have adequate time to have another law firm prepare a "stellar brief." Absent some good news next week, we may have to go it alone on the [a]ppeal. If that is the case, your fee will not have to be reduced because we were unable to find legal representation that fit our financial criteria.

Foster represented Bajwa on appeal to the Eighth Circuit, which resulted in Bajwa recovering $2,105,392.25.[1] But Foster did not represent Bajwa on his appeal to the Eighth Circuit of the federal district court's determination that Howard could offset the $600,000 NSP receivable against its debt to GSI.[2]

Bajwa told Foster that Foster was entitled to 12% of the award, pursuant to the

---

1. *See Gas Aggregation Servs., Inc. v. Howard Avista Energy, L.L.C.,* 319 F.3d 1060 (8th Cir. 2003) (reversing district court vacation of awards for general trading account and loss of business, affirming vacation of award of attorney fees, costs and interest, and noting that the district court's affirmance of the arbi-

tration award of the $600,000 held by NSP was not challenged on appeal).

2. That determination was reversed. *Gas Aggregation Servs., Inc. v. Howard Avista Energy, L.L.C.,* 388 F.3d 639, 642 (8th Cir.2004).

agreement of March 13, 2002. Bajwa also threatened to sue Foster for malpractice. On the advice of his malpractice insurer, Foster then withdrew from representation of Bajwa. Foster then moved the Ramsey County District Court, which was handling the NSP interpleader action, pursuant to both Minn.Stat. § 481.13 (2002) and the parties' arbitration agreement, to establish a lien on the $600,000 held by that court and on whatever funds Bajwa would recover in the federal action and "for an order defining the rights and obligations" of himself and Bajwa relative to his representation of Bajwa in both the federal action and the state action.

The transcript of the hearing on Foster's motion indicates that Bajwa argued that the March 13, 2002 agreement, which provided a 12% fee for Foster, governed, and Foster argued that the February 26, 2001 agreement, providing a 24% fee, governed because Bajwa had not hired another law firm to conduct the appeal and Foster had handled it. Foster also relied on Bajwa's letter of April 5, 2002, stating that, because Bajwa had not been able to hire other counsel to handle the appeal, Foster's fee would not be reduced. The transcript also shows that the district court was reluctant to act as an arbitrator and that the parties agreed to accept the district court's decision.

Acting judicially rather than as an arbitrator, the district court awarded Foster "24 percent of the $2,105,392.25 award, plus interest, which was obtained in arbitration and was ultimately affirmed by the Eighth Circuit Court of Appeals." The district court established an attorney's lien for that amount and ordered that 24% of the $600,000 be held pending resolution of the Eighth Circuit decision on whether

Howard could offset the $600,000 against the amount it owed Bajwa.

## ISSUE[3]

Did the district court have jurisdiction to determine and establish attorney liens?

## ANALYSIS

■ Bajwa argues first that the district court lacked subject-matter jurisdiction because the fees Foster claimed resulted from the federal action, not the state action. Questions of subject-matter jurisdiction are reviewed de novo. *Johnson v. Murray*, 648 N.W.2d 664, 670 (Minn.2002).

■ Bajwa's argument ignores Minn. Stat. § 481.13, subd. 1 (2002), providing in relevant part:

(b) An attorney has a lien for compensation upon a judgment, whether there is a special express or implied agreement as to compensation, or whether a lien is claimed for the reasonable value of the services . . . .

(c) A lien provided by paragraphs (a) and (b) may be established, and the amount of the lien determined, summarily by the court under this paragraph on the application of the lien claimant[.] . . .

Minn.Stat. § 481.13, subd. 1(c), was amended in 2002. 2002 Minn. Laws ch. 403, § 2. The amendment changed the phrase "The liens . . . may be established, and the amount thereof determined, by the court, summarily, in the action or proceeding," to "A lien . . . may be established, and the amount of the lien may be determined, summarily by the court under this paragraph." We conclude that by changing the phrase "in the action or proceeding," to "by the court under this paragraph," the legislature intended that the statute henceforth would empower a court

---

3. We note that neither party raises the issue of whether the arbitration award was subsequently reduced to judgment and accordingly do not address that issue.

to establish and determine liens without regard to whether or not the action or proceeding in which the fees were incurred was before that court. Therefore, contrary to Bajwa's argument, we further conclude that the fact that Foster's fees were incurred in a federal court action does not bar state court jurisdiction under Minn. Stat. § 481.13 (2002).[4]

■ Bajwa argues in the alternative that the district court lacked jurisdiction because of the parties' October 10, 2001 arbitration agreement, in which they agreed to arbitrate their fee dispute. But Bajwa himself drafted the March 13, 2002 agreement, providing that the "[p]arties had a disagreement about fees in August 2001 and agreed to resolve it via presenting the dispute to [a particular district court judge] or other mutually agreeable Judge. This [March 13, 2002] agreement now resolves all past disputes regarding fees between the parties." The parties clearly intended their March 13, 2002 agreement to supercede the August 2001 agreement. Therefore, Bajwa's argument that the superceded arbitration agreement deprived the district court of jurisdiction is specious at best.

Moreover, Bajwa's conduct at the hearing conveyed his willingness to have the district court resolve the dispute. When the district court said it might not be authorized to act as an arbitrator, Foster said that, in that case, the district court should resolve the dispute under Minn. Stat. § 481.13 and asked Bajwa if he agreed that the dispute should be resolved one way or the other. Bajwa said he wanted a resolution. The district court then asked both parties if they agreed to

his resolving the dispute either by arbitration or, if that were not permitted, judicially. Again, Bajwa agreed.

■ Having agreed at the hearing that the district court could resolve the dispute either through arbitration or by addressing Foster's Minn.Stat. § 481.13 motion, Bajwa cannot argue now that some other judge must resolve it through arbitration. A party may not consent to a legal proceeding by participating in it and later challenge the validity of the procedure, or take a position and later take a contradictory position on appeal. *See, e.g., Johnson v. Jensen*, 446 N.W.2d 664, 665–66 (Minn. 1989) (defendants who consented to trial of plaintiffs' entitlement to punitive damages could not contend on appeal that plaintiff was limited to statutory damages); *Wadena v. Bush*, 305 Minn. 134, 147–48, 232 N.W.2d 753, 762 (1975) (party whose counsel waived objection to evidence based on lack of foundation could not appeal on the basis of lack of foundation); *Am. States Ins. Co. v. Ankrum*, 651 N.W.2d 513, 522–23 (Minn.App.2002) (party who acquiesced in submitting issue to jury could not argue on appeal that issue should not have gone to jury); *Texas Commerce Bank v. Olson*, 416 N.W.2d 456, 462–63 (Minn.App.1987) (party that had not objected to untimely hearing date at scheduling could not on appeal insist on strict compliance with timeliness rule); *Voss v. Duerscherl*, 408 N.W.2d 161, 165 (Minn.App.1987) (rejecting argument that "directly contradicts the position [appellants] successfully took in the first appeal of this case"), *rev'd on other grounds*, 425 N.W.2d 828 (Minn. 1988).

---

4. The three cases on which Bajwa relies to support his statutory argument, *Crolley v. O'Hare Int'l Bank*, 346 N.W.2d 156 (Minn. 1984); *Schroeder, Siegfried, Ryan & Vidas v. Modern Elec. Prods., Inc.*, 295 N.W.2d 514 (Minn.1980); and *Blazek v. N. Am. Life & Cas. Co.*, 265 Minn. 236, 121 N.W.2d 339 (1963), are irrelevant because they predate the amendment.

■ Importantly, we recognize that litigants cannot by their agreement confer subject-matter jurisdiction on a court where there is no independent basis for assuming jurisdiction. *No Power Line, Inc. v. Minn. Envtl. Quality Council,* 262 N.W.2d 312, 321 (Minn.1977). Our interpretation of Minn.Stat. § 481.13, however, provides the basis for jurisdiction. Bajwa cannot now insist that the district court lacked jurisdiction and that arbitration is the only possible resolution.

■ Finally, for the first time on appeal, Bajwa argues that because Foster's representation had been terminated prior to the motion to establish an attorney lien, the district court erred in awarding Foster the amount established in the parties' contingency fee agreement rather than awarding him the value of his services, quantum meruit. Parties are bound, however, by the arguments they make to the district court. *See Boatwright v. Budak,* 625 N.W.2d 483, 489 (Minn.App.2001) (arguing under a different theory on appeal precludes review unless the court chooses to review in the interests of justice), *review denied* (Minn. July 24, 2001). A quantum meruit argument was not made to the district court, and this court cannot consider arguments not so presented. *Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988). Therefore, this argument is not properly before us.[5]

---

5. In any event, the argument that the parties' contingency fee agreement cannot be used as the basis for Foster's lien is without merit. Bajwa relies on *Ashford v. Interstate Trucking Corp.,* 524 N.W.2d 500 (Minn.App.1994); *In re L-tryptophan Cases,* 518 N.W.2d 616 (Minn. App.1994); and *Stall v. First Nat'l Bank,* 375 N.W.2d 841 (Minn.App.1985), to argue that "when a lawyer either quits or is terminated before the representation is concluded, his fees are to be determined by weighing several factors but not based on the uncompleted contingent-fee agreement." His reliance is misplaced; all three cases are readily distinguishable. Moreover, *Ashford* holds that "The concept of quantum meruit does not require that attorneys be paid on an hourly basis. Such a rigid rule would not allow due consideration to the relevant circumstances surrounding either a discharge or a withdrawal." 524 N.W.2d at 503. The circumstances surrounding Foster's withdrawal are: (1) it was caused by Bajwa's repeated threats of a malpractice action; (2) it was advised by Foster's malpractice insurer; and (3) the Eighth Circuit had already issued its decision reinstating Bajwa's approximately $2,000,000 arbitration award, which had been obtained through Foster's efforts. Bajwa's quantum meruit argument is without merit.

## DECISION

Under Minn.Stat. § 481.13 (2002) the district court had jurisdiction to establish respondent's attorney lien on amounts appellant recovered and may recover from proceedings before a federal court.

**Affirmed.**